OTIS ELEVATOR COMPANY, APPELLANT, *v.*
RICHARD E. REID, RESPONDENT.

No. 15767

September 24, 1985                                    706 P.2d 1378

---

*Beasley, Hamilton & Holden,* Reno; *Lionel, Sawyer & Collins* and *David N. Frederick,* Las Vegas, for Appellant.

*Warren W. Goedert,* Reno, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a judgment entered on a jury verdict which awarded respondent $317,500.00 in damages for injuries sustained in an elevator accident.

### THE FACTS

On October 14, 1980, respondent Richard Reid was riding in an elevator manufactured and exclusively maintained by appellant Otis Elevator Company (Otis) when the elevator's overspeed safety switch tripped, causing the elevator to stop two to three feet above the second floor.

Reid testified that he entered the elevator from the fourth floor in order to get to the first floor. After the elevator doors closed, the elevator jumped up and down and then descended rapidly. When the overspeed safety switch tripped, the resulting abrupt stop caused Reid to strike his left cheek against his left knee.

Otis' maintenance records indicated that the overspeed switch had engaged on four previous occasions in 1975, 1976, 1978 and

1979. After each incident, except for the one in 1976, Otis checked the elevator by resetting the switch and running the elevator up and down. In 1976 the motor was also checked and found in need of adjustment. The exact cause of these incidents was never determined nor was the problem corrected.

At trial, medical experts testified that the elevator accident aggravated Reid's preexisting back and knee injuries. A few days after the accident, Reid was hospitalized for a week and put into traction to relieve his back pain. Reid never returned to work after his hospital stay.

Otis' expert witness, Walter Figiel, testified that Reid was subjected to force equivalent to stepping off a six-inch step when the overspeed switch triggered. In rebuttal, Reid's expert, Lindley Manning, testified that Reid was subjected to much greater force because he did not anticipate the stop.

The district court instructed the jury on the doctrines of negligence and *res ipsa loquitur.* The jury returned a verdict for Reid awarding him $317,500.00 in damages for medical expenses, pain and suffering, and lost income. From this verdict, Otis appeals.

## *RES IPSA LOQUITUR INSTRUCTION*

The instruction given on the doctrine of *res ipsa loquitur* by the district court is identical to an instruction sanctioned by this court as "a correct statement of the [*res ipsa loquitur*] standard announced in Bialer v. St. Mary's Hospital, 83 Nev. 241, 427 P.2d 957 (1967)."[1] American Elevator Co. v. Briscoe, 93 Nev.

---

[1] The instruction read:

Plaintiff claims that there was an accidental occurrence; defendants deny it. If you should find that as claimed by the plaintiff there was an accidental occurrence and the plaintiff was injured thereby, then you are instructed as follows:

It is a rule of law that negligence may be established without proof of specific acts or omissions. This is based on a special doctrine of the law which may be applied if you find from the evidence the following:

First: The fact that some certain instrumentality by which injury to the plaintiff was proximately caused, was in the possession and under the exclusive control of the defendants at the time the cause of injury was set in motion; it appearing on the face of the event that the injury was caused by some act or omission incident to defendants' management.

Second: The fact that the accident was one of such nature as does not happen in the ordinary course of things, if those who have control of the instrumentality use ordinary care.

Third: The fact that the circumstances surrounding the causing of the accident was such that the plaintiff is not in a position to know what specific conduct was the cause, whereas the ones in charge of the instrumentality may reasonably be expected to know and be able to explain how the accident was caused, or at least be able to show that no failure of duty on their part was a cause.

665, 668, 572 P.2d 534 (1977). Nonetheless, Otis contends that the instruction should have included the following language from the *Briscoe* opinion:

> *Res ipsa loquitur* is a balancing doctrine, and while the plaintiff need not show the exact cause of an injury, he must at least show that it is more probable than not that the injury resulted from the defendant's breach of duty.

*Id.* at 669.

Without this language, Otis argues, the *res ipsa* instruction given by the court failed to convey Reid's burden of proof, enabling the jury to find for him on insufficient evidence. We address the allegation of instructional error and the claim of insufficient evidence separately because we conclude that the evidence is sufficient to support a finding of negligence even without benefit of a *res ipsa* inference of breach of duty.

■■■■

A *res ipsa* inference of negligence is permitted when one entity is shown to be in exclusive control of the instrumentality causing harm, where the accident is one that does not ordinarily occur in the absence of negligence, and where the defendant is in a better position to explain the cause of the accident. Proof of exclusive control, the first element listed above, substitutes for proof of the specific act constituting the breach when the latter two elements are also satisfied. *See* Hospital Ass'n v. Gaffney, 64 Nev. 225, 233, 180 P.2d 594 (1947); Hampton v. United States, 121 F.Supp. 303, 305 (D.Nev. 1954). In *Briscoe* we were addressing the issue of whether the defendant, American Elevator, was in exclusive control of the elevator. Thus we concluded that the plaintiff had to prove that the elevator fall was caused by American Elevator's breach, and not some other entity's. The plaintiff met this burden by presenting evidence that American Elevator had exclusively maintained the elevator for a number of years before the accident.

■■■■

The *res ipsa* instruction given by the district court correctly stated the doctrine's exclusive control requirement. The additional language from the *Briscoe* opinion was not only unnecessary, but also, taken out of context, would have served only to confuse the jury. The district court did not err, therefore, in refusing Otis' requested addition.

## *SUFFICIENCY OF THE EVIDENCE*

Otis contends that the evidence was insufficient for the jury to find that Otis' negligence more probably than not caused Reid's injuries. Although Otis' expert testified to a number of possible

causes for the tripping of the overspeed switch,[2] we conclude that substantial evidence supports a finding that the switch engaged because the elevator oversped.

Otis' assertion that there is no evidentiary basis from which the jury could find that the elevator oversped is without foundation. Reid testified that the elevator descended faster than normal before coming to a sudden halt. Another witness, Terry Staples, testified that a similar incident occurred two to three months before Reid's accident, when Staples was riding in the elevator.

Otis' own maintenance records indicate that the switch engaged on four previous occasions. Otis' response to these repeated malfunctions was to reset the switch and run the elevator up and down a few times. Otis failed to take affirmative steps to discover the source of the malfunctions. This conduct, in our view, amounts to a clear showing of negligence apart from the doctrine of *res ipsa loquitur.* In a case on strikingly similar facts, a federal court upheld a finding of negligence where the defendant failed to show why it could not locate the cause of the problem:

> The jury must have concluded that three times is too much, once perhaps, twice maybe, but certainly no for the third time. Otis knew of the specific phenomenon. It did not remedy it the first time. It did not remedy it the second time. That, the jury could infer, shows a failure to exercise ordinary prudence in making the repair. Indeed, in many ways, the expertise of Otis may have convicted it in the jury's mind more by reason of this unexplained triple occurrence than had Robinson been able to prove the absence or defect of a particular screw or resistor, relay, vacuum tube or insulator. Proof would have had to come from an Otis employee. Otis was hired because it knew elevators. The jury may have reasoned that until Otis could come in and identify the cause (or all possible causes) and then show why this could not reasonably have been discovered, the failure of the expert to locate and correct the source of trouble showed neglect in the performance of the work in which it claimed pre-eminent competence.

Otis Elevator Company v. Robinson, 287 F.2d 62, 65-66 (5th Cir. 1961).

---

[2]If the elevator was not speeding, the switch could have been triggered by any of the following:
1. Manual tripping of the switch.
2. Jumping up and down in the elevator.
3. Improper setting of the switch.
4. Pushing the red emergency button.
5. An electrical power surge.

Otis' failure to use reasonable care to discover the cause of the tripping of the overspeed switch or to explain why it could not locate the source of the problem supports a finding of negligent maintenance by the jury. Although "[n]o direct evidence of any act of negligence by Otis was introduced . . . circumstantial evidence of sufficient probative force may permit a jury to infer negligence." Rogers v. Dorchester Associates, 347 N.Y.S.2d 22, 26 (1973). The jury could have inferred negligence from Otis' failure to discover and correct the cause of the frequent tripping of the overspeed switch.

The fact that a number of non-negligent causes could have caused the incidents does not excuse Otis from liability. This is not a case where there are two or more equally probable explanations for an accident, some attributable to negligence and others not, such that a jury could not find the negligent cause more probably than not caused the accident. *See* Truckee-Carson Irr. Dist. v. Wyatt, 84 Nev. 662, 448 P.2d 46 (1968), *cert. denied,* 395 U.S. 910 (1969). Reid's and Staples' testimony provided the basis for an inference that the elevator oversped. Otis presented no evidence to indicate that any of the non-negligent possibilities caused the switch to trip. The negligent and non-negligent explanations, therefore, were not equally probable. As we stated in *Briscoe,* the plaintiff is not equally obligated "to establish exclusive control in the defendant with respect to *any possible cause* of the accident before permitting the application of *res ipsa loquitur.*" 93 Nev. at 670. We conclude, therefore, that an inference of negligent maintenance is supported by substantial evidence under either the doctrine of *res ipsa loquitur* or ordinary negligence.

## TAX EXEMPTION INSTRUCTION

Otis contends it was reversible error for the district court to refuse to instruct the jury that personal injury awards are exempt from the income tax. We disagree.

Jurisdictions which have considered the propriety of these instructions are divided into three groups. The majority prohibit tax instructions under any circumstances. *See, e.g.,* Scallon v. Hooper, 293 S.E.2d 843 (N.C.App. 1982) (adopting majority rule; error to instruct that wrongful death award exempt from taxation). The minority view, exemplified by the United States Supreme Court decision in Norfolk & Western R. Co. v. Liepelt, 444 U.S. 490 (1980), requires trial courts to give the instruction

upon request of counsel.[3] In a few jurisdictions, the instruction may be given at the discretion of trial court. *See generally* Annot., 16 A.L.R. 4th 589 (1982).

In determining whether a tax exemption instruction is appropriate under the latter rule, other jurisdictions have focused on whether the jury has been exposed to the issue of taxes during trial, either by the evidence or by comments by counsel. *See, e.g.,* Bernier v. Boston Edison Co., 403 N.E.2d 391 (Mass. 1980); Griffin v. General Motors Corp., 403 N.E.2d 402 (Mass. 1980). We conclude that tax exemption instructions are appropriate only as curative devices designed to eliminate any prejudice resulting from the jury's exposure to tax-related issues at trial. Our review of the record here convinces us that the issue of taxes was not brought to the jury's attention. We recognize that some tax-conscious juries are likely to inflate damage awards in their ignorance of laws exempting these awards from the income tax. *See Liepelt,* 444 U.S. at 496. We conclude, however, that the confusion and complications that would arise if tax instructions were permitted as a matter of right outweigh the benefit of obtaining greater precision in calculating damage awards.

Therefore, we hold that tax instructions are appropriate only in special circumstances when the likelihood that the jury will consider tax consequences is magnified by discussion of tax-related issues during the trial. Since the tax consequences of Reid's award were never discussed in the presence of the jury, the district court did not abuse its discretion in refusing Otis' proposed instruction.

## FAILURE TO DISCLOSE AN EXPERT WITNESS

The district court allowed Reid's expert witness, Lindley Manning, to testify despite pretrial statements by Reid's counsel that Manning would not testify. The district court precluded Otis from deposing Manning or otherwise discovering Manning's opinions based on these assertions that he would not be used at trial. Reid's counsel did, however, expressly reserve the right to call Manning in rebuttal.

After Otis' expert, Walter Figiel, testified that the force Reid was subjected to in the elevator stop was equivalent to stepping off a six-inch step, Reid's counsel called Manning to the stand for

---

[3]The *Liepelt* decision was expressly predicated on federal law. 444 U.S. at 493. We are not bound, therefore, to apply the *Liepelt* rule to claims arising under state law. *See* Newlin v. Foresman, 432 N.E.2d 319 (Ill.App. 1982).

rebuttal testimony. Manning testified, over objection, that the force Reid was subjected to was much greater than Figiel had indicated because Reid had not anticipated the stop.

Ordinarily, the names of expert witnesses and their expected testimony must be disclosed to an opposing party before trial. NRCP 26(b)(4). The rule does not state what sanction is to be employed for the failure to comply with the disclosure requirements. Otis contends that the district court abused its discretion in permitting an undisclosed expert witness to testify, citing Smith v. Ford Motor Co., 626 F.2d 784 (10th Cir. 1980), *cert. denied,* 450 U.S. 918 (1981). In *Smith* the Tenth Circuit held that the trial court had abused its discretion by allowing the plaintiff's medical expert to testify even though the plaintiff had failed to disclose the substance of the expert's testimony when specifically ordered to do so.[4] Reasoning that ''effective cross-examination of an expert witness requires advance preparation,'' the *Smith* court concluded that the defendant had been prejudiced by the testimony. *Id.* at 793.

We conclude, however, that the *Smith* analysis is inapplicable in this particular setting. Manning was not called to support the case in chief but as a rebuttal witness. Otis argues that Reid should have known it would be necessary to call Manning to rebut Figiel's testimony. We disagree. Otis supplied Reid with Figiel's name and report only one week before trial. The report did not indicate fully the nature of Figiel's expected testimony, stating only that the overspeed switch stop ''[f]or the average normal person . . . is universally acceptable and tolerable.'' The report failed to disclose Figiel's opinion that the stop was akin to stepping off a six-inch step. This testimony was certainly more damaging than the statement contained in the report. Reid's counsel could have honestly concluded that it would not be necessary to call Manning to testify. We also note that Reid's counsel expressly reserved the right to call Manning in rebuttal, thus negating any inference of bad faith.

## CONCLUSION

There was sufficient evidence to support a finding that Reid's injuries were the result of Otis' failure to properly maintain the

---

[4]NRCP 26(b)(4) is identical to the federal rule examined in *Smith.*

elevator. Otis' other assignments of error are also without merit. Accordingly, we affirm the judgment for Reid.[5]

---

[5]Otis also argues that the district court should have *sua sponte* removed district court Judge William Forman from the jury panel. We have previously held, however, that it is the Legislature's prerogative to decide questions of per se exclusion for implied bias. State v. Lewis, 50 Nev. 212, 224, 255 P. 1002 (1927). The Legislature enumerated the grounds upon which a challenge for implied bias may be made in NRS 16.050. Judges are not listed as a category subject to per se exclusion in that statute. Although we agree with Otis that there are inherent risks in such a practice that warrant its prohibition, i.e., that the judge-juror will interpret the law for and have undue influence over his fellow jurors, we defer to the legislative will.