LANDMARK HOTEL & CASINO, INC., Appellant, v.
BERTHA L. MOORE, WILGAR BROTHERS GLASS,
HORTON AUTOMATIC, a Division of OVERHEAD
DOOR CORPORATION, Since Changed Its Name to
the DALLAS CORPORATION, Respondents.

No. 18281

June 28, 1988                                        757 P.2d 361

*Beckley, Singleton, DeLanoy, Jemison & List,* and *Daniel Polsenberg,* and *Ellen J. Winograd,* Las Vegas, for Appellant.

*Jimmerson & Davis,* and *Lynn M. Hansen,* Las Vegas, for Respondent Bertha L. Moore.

*Thomas Beatty,* Las Vegas, for Respondent Dallas Corporation.

*Miles, Pico & Mitchell,* Las Vegas for Respondent Wilgar Brothers Glass.

## OPINION

*Per Curiam:*

This is an appeal from a judgment against Landmark Hotel and Casino, Inc. (hereinafter "Landmark") awarding Bertha L. Moore $49,571.65 in present damages and $39,428.35 in future damages. Landmark additionally appeals from the trial court's NRCP 41(b) dismissals of Bertha L. Moore's strict liability claims against Wilgar Brothers Glass Company and Horton Automatic, from an order denying Landmark's motion to amend the judgment, from a partial judgment on the verdict in favor of Wilgar Brothers Glass Company, and from all interlocutory and post-judgment rulings in this action.

Ninety-four year old Bertha L. Moore (hereinafter "Moore") was injured when she attempted to enter the Landmark Hotel and Casino in Las Vegas through an entrance with automatic sliding glass doors. Before Moore could pass completely through the entrance, the doors closed on her, knocking her down and injuring her severely. Moore filed a complaint against the following parties: Landmark Hotel and Casino, Inc.; Wilgar Brothers Glass Company (hereinafter "Wilgar"); and Horton Automatic (here-

inafter "Horton").[1] Moore's amended complaint stated causes of action against all three defendants for negligence and against Wilgar and Horton for strict liability.

The trial court granted Horton's NRCP 41(b) motion to dismiss as to both the strict liability and negligence causes of action. The trial court granted Wilgar's NRCP 41(b) motion to dismiss as to the strict liability cause of action but not as to the negligence cause of action. We hold that Landmark's challenge to the NRCP 41(b) dismissals of Moore's strict liability claims against Wilgar and Horton must fail since Landmark failed to object to the dismissals at trial.

Pursuant to NRCP 46, for all purposes for which a formal exception to a ruling or order of the court was formerly necessary, it is now sufficient that a party "makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor." NRCP 46. Nevertheless, failure to object to a ruling or order of the court results in waiver of the objection and such objection may not be considered on appeal. Mahan v. Hafen, 76 Nev. 220, 351 P.2d 617 (1960).

Landmark contends that it is irrelevant which party called the error to the trial court's attention, arguing that since Moore objected to the dismissals of Wilgar and Horton, the issue was preserved for appeal. According to Landmark, Moore fully articulated the arguments against the NRCP 41(b) motions, and it would have added nothing for Landmark to have joined in Moore's arguments. Even if this issue were raised for the first time on appeal, insists Landmark, granting Wilgar and Horton's NRCP 41(b) motions was plain error, which this court may consider even in the absence of an objection below if it is so substantial as to result in a miscarriage of justice.

The purpose of the requirement that a party object to the action of the trial court at the time it is taken is to allow the trial court to rule intelligently and to give the opposing party the opportunity to respond to the objection. Sharon v. Minnock, 6 Nev. 377 (1871). In the present case, Landmark and Moore were opposing parties. We will not assume, as Landmark entreats, that defendant Landmark's objections to the dismissal of its co-defendants would mirror those objections made by plaintiff Moore. *Cf.* Greenleaf v. Birth, 9 Pet. 292, 9 L.ed. 132 (1835) (defendant can only take advantage of his own exception and may not rely on exceptions of

---

[1]Wilgar was the installer of the doors, and Horton was the manufacturer.

the plaintiff). Moreover, we are persuaded by Moore's argument that had Landmark properly objected to the dismissal of Moore's strict liability claims against Wilgar and Horton, Moore, as a matter of strategy, might have dropped those claims to avoid having to relitigate them on appeal. Thus, Landmark's failure to object not only deprived the trial court of information and arguments necessary to allow the trial court to rule intelligently, Landmark also unfairly prejudiced Moore by concealing from her the possibility of an appeal by Landmark of the dismissals of the strict liability claims against Landmark's co-defendants.

We conclude that no manifest injustice resulted from the dismissals of Moore's strict liability claims against defendants Wilgar and Horton. Accordingly, we reject Landmark's contention that its allegations of "plain error" entitle Landmark to appellate review of judicial actions Landmark neglected to object to below.

We are also unable to find merit in Landmark's challenge of the judgment against it. After a jury trial—in which the trial court instructed the jury on the doctrine of res ipsa loquitur as to Landmark, but not as to Wilgar—the jury found Landmark liable to Moore, but exonerated Wilgar. Landmark contends that it was error for the trial court to give the res ipsa loquitur instruction.

In Otis Elevator Co. v. Reid, 101 Nev. 515, 706 P.2d 1378 (1985), we explained the application of the doctrine of res ipsa loquitur as follows:

> A *res ipsa* inference of negligence is permitted when one entity is shown to be in exclusive control of the instrumentality causing harm, where the accident is one that does not ordinarily occur in the absence of negligence, and where the defendant is in a better position to explain the cause of the accident. Proof of exclusive control, the first element listed above, substitutes for proof of the specific act constituting the breach when the latter two elements are also satisfied.

*Otis Elevator,* 101 Nev. at 519, 706 P.2d at 1380.

Landmark contends that it was reversible error for the trial court to instruct the jury on the res ipsa loquitur doctrine because (1) Moore set out specific negligent acts or omissions in her complaint rather than relying on general allegations of negligence, (2) Landmark did not have exclusive control over the doors, and (3) Moore's accident was one that would ordinarily occur in the absence of negligence.

Relying on Austin v. Dilday, 55 Nev. 357, 34 P.2d 1073 (1934), *noted in* Annotation, *Modern Trends as to Pleading a Particular Cause of Injury or Act of Negligence as Waiving or*

*Barring the Right to Rely on Res Ipsa Loquitur,* 2 A.L.R.3d 1335 (1965), Landmark contends that res ipsa loquitur is not applicable in this case because Moore, instead of relying on general allegations of negligence, set out specific acts or omissions in her complaint. We disagree. The allegations of negligence stated in Moore's complaint were sufficiently general that *Austin* does not preclude Moore from asserting her right to invoke the doctrine of res ipsa loquitur.[2]

Landmark also argues that the res ipsa loquitur instruction should not have been given because it was not clear that Landmark had exclusive control over the doors that injured Moore. *See* Fireman's Fund Am. Ins. Co. v. Knobbe, 93 Nev. 201, 562 P.2d 825 (1977). We find Landmark's position unsupported by the record and point out that Landmark admits that there was no evidence of a maintenance agreement, which would have suggested joint control, between Landmark and the other defendants.

Also unconvincing is Landmark's contention that Moore's accident with the automatic sliding doors was of the type that would ordinarily occur in the absence of negligence. In Rose v. Port of New York Auth., 293 A.2d 371 (N.J. 1972), *noted in* Prosser and Keeton on the Law of Torts (W. Keeton 5th ed. 1984), the plaintiff was struck and injured by an automatic door controlled by a pressure sensitive mat. The *Rose* court commented:

> Members of the public passing through automatic doors, whether in an airport, office building or supermarket do so generally, without sustaining injury. What happened to the plaintiff here is fortunately unusual and not commonplace. It strongly suggests a malfunction which in turn suggests neglect.

*Rose,* 293 A.2d at 375. We agree with the *Rose* court. Automatic sliding glass doors of the type that injured Moore are ubiquitous, affording the public safe ingress and egress to countless facilities on a daily basis. What happened to Moore is unusual; it strongly suggests a malfunction attributable to negligence.

Finally, Moore's expert witness testified that the automatic doors that injured Moore should receive thorough mechanical inspections at least every six months, and that they should be inspected weekly to determine if they are working properly.

---

[2]We do not, by addressing Landmark's contentions on this issue, make a determination of the vitality of the largely neglected *Austin* case.

Landmark's assistant chief engineer testified that Landmark did not have any regular maintenance or inspection program for the doors that injured Moore. Such testimony compels the conclusion that the automatic sliding glass doors would not have closed prematurely, and with such disproportionate force, in the absence of negligence on the part of Landmark.

Review of Landmark's remaining contentions reveals them to be without merit; accordingly, we affirm the judgment of the trial court.