JOAN JOHNSON, Appellant, *v.* ASCAR EGTEDAR, M.D. AND ASCAR EGTEDAR, M.D., INC., Respondents.

No. 26031

April 30, 1996 915 P.2d 271

*James Oran Porter, Chtd.* and *Robert D. Walker,* Las Vegas, for Appellant.

*Dawson & Associates* and *Booker T. Evans,* Las Vegas; *Schuering, Zimmerman, Scully & Nolen* and *Thomas J. Doyle,* Sacramento, California, for Respondents.

## OPINION

*Per Curiam:*

Appellant Joan Johnson underwent surgery to the lumbar region of her spine. Following the surgery, Johnson exhibited

various adverse symptoms. Johnson thereafter filed suit against respondents Ascar Egtedar, M.D. and Egtedar, M.D., Inc. (referred to collectively as "Dr. Egtedar") for battery and medical malpractice. After a trial, the jury returned a six-to-two verdict in favor of the respondent physician. Because the district court abused its discretion by refusing Johnson's proposed jury instructions and by limiting the testimony of one of her expert witnesses, we are constrained to vacate the judgment entered below and remand this case for a new trial.

## FACTS

The present litigation arises out of plaintiff/appellant Joan Johnson's December 1986 lower back surgery (lumbar laminectomy), which was performed by defendant/respondent Ascar Egtedar, M.D., an orthopedic surgeon. At trial, Johnson presented expert testimony that Dr. Egtedar operated at the wrong level of Johnson's spine and plunged an instrument out of the operative field penetrating her spinal dura, psoas major muscle, colon and left ureter. Following the surgery, Johnson developed peritonitis and began to accumulate fluid, presumably urine, in the tissue surrounding her left ureter. Soon thereafter, Johnson also developed an e. coli spinal meningitis which resulted in serious disability. According to Johnson's experts, the meningitis resulted from the transfer of e. coli bacteria by a contaminated instrument during the operation and from the continuing migration of bacteria from the colon to the spinal column along the abnormal pathway cut by Dr. Egtedar.

In rebuttal, Dr. Egtedar presented expert medical testimony contradicting the opinions given by Johnson's experts. According to Dr. Egtedar's experts, Johnson's injuries and illnesses were attributable to an unrelated disease process (namely, diverticulitis of the colon), her post-operative positioning, and the conduct of Johnson's subsequent treating physicians. Dr. Egtedar's experts also testified that the operation had been conducted at the proper level of the spine.

On appeal Johnson contends that the district court erred (1) by refusing to instruct the jury according to Nevada's statutory res ipsa loquitur rule in medical malpractice cases; (2) by instructing the jury, using an improper definition of proximate cause; (3) by limiting the testimony of one of her expert witnesses; and (4) by admitting pathology slides without proper authentication. Johnson also contends that she was denied a fair trial because of certain misstatements allegedly made by the bailiff in response to a question from the jury foreman.

## DISCUSSION

Res ipsa loquitur *instruction*

It is well established that a party is entitled to jury instructions on every theory of her case that is supported by the evidence. *See* Allan v. Levy, 109 Nev. 46, 846 P.2d 274 (1993); Beattie v. Thomas, 99 Nev. 579, 668 P.2d 268 (1983). Johnson contends that the trial court erred in refusing her proposed jury instructions patterned on NRS 41A.100, Nevada's statutory res ipsa loquitur rule for medical malpractice cases.[1]

Johnson's Proposed Jury Instruction A (Plaintiff's A) follows Nev. J.I. 6.17, as modified to reflect the alleged existence of only two of the five possible factual predicates enumerated in NRS 41A.100, namely: 41A.100(1)(d) ("injury" suffered "during the course of treatment to a part of the body not directly involved in the treatment or proximate thereto") and 41A.100(1)(e), (surgi-

---

[1]NRS 41A.100, first adopted in 1975 as part of the medical legal screening panel legislation, provides:

 1. Liability for personal injury or death is not imposed upon any provider of medical care based on alleged negligence in the performance of that care unless evidence consisting of expert medical testimony, material from recognized medical texts or treatises or the regulations of the licensed medical facility wherein the alleged negligence occurred is presented to demonstrate the alleged deviation from the accepted standard of care in the specific circumstances of the case and to prove causation of the alleged personal injury or death, except that such evidence is not required and a rebuttable presumption that the personal injury or death was caused by negligence arises where evidence is presented that the personal injury or death occurred in any one or more of the following circumstances:

 (a) A foreign substance other than medication or a prosthetic device was unintentionally left within the body of a patient following surgery;

 (b) An explosion or fire originating in a substance used in treatment occurred in the course of treatment;

 (c) An unintended burn caused by heat, radiation or chemicals was suffered in the course of medical care;

 (d) An injury was suffered during the course of treatment to a part of the body not directly involved in the treatment or proximate thereto; or

 (e) A surgical procedure was performed on the wrong patient or the wrong organ, limb or part of a patient's body.

 2. As used in this section, "provider of medical care" means a physician, registered nurse or a licensed hospital as the employer of any such person.

NRS 41A.100 substantially mirrors the model res ipsa loquitur law drafted by the American Medical Association (AMA). The AMA's model res ipsa loquitur law has been endorsed by the American Bar Association Commission on Medical Professional Liability. *See* "Interim Report of the Commission on Medical Professional Liability," pp. 53-54 (ABA 1976) (hereinafter ABA report).

cal procedure performed "on the wrong patient or the wrong organ, limb or part of a patient's body").[2] Dr. Egtedar objected to Plaintiff's A on the ground that it is an inadequate res ipsa loquitur instruction. We believe the legislature intended NRS 41A.100 to replace, rather than supplement, the classic res ipsa loquitur formulation in medical malpractice cases where it is factually applicable. Thus, Dr. Egtedar's objection is without merit.

Under the traditional res ipsa loquitur doctrine, the presumption of negligence only arises after the plaintiff has established that the event in question is one that ordinarily does not occur in the absence of negligence. Restatement (Second) of Torts § 328D cmt. c (1965). In a medical malpractice case, under the traditional doctrine, whether the event in question is one that ordinarily does not occur in the absence of negligence may be within the common knowledge of a lay person. If not, the testimony of an expert witness is required. *Id.* at cmt. d.

Under NRS 41A.100, however, the presumption automatically applies where any of the enumerated factual circumstances are

---

[2]Plaintiff's A provides:

> The law provides for a rebuttable presumption that a personal injury was caused by negligence where the personal injury occurred under any one or more of the following circumstances:
>
> An injury was suffered during the course of treatment to a part o[f] the body not directly involved in the treatment or proximate thereto; or
>
> A surgical procedure was performed on the wrong patient or the wrong organ, limb or part of a patient's body.
>
> If you find by a preponderance of the evidence that:
>
> An injury was suffered during the course of treatment to a part o[f] the body not directly involved in the treatment or proximate thereto; or
>
> A surgical procedure was performed on the wrong patient or the wrong organ, limb or part of a patient's body, then the rebuttable presumption operates to shift to the defendant the burden of proving, by a preponderance of the evidence, that the personal injury was not caused by negligence.
>
> If[,] on the other hand, you do not find by a preponderance of the evidence that:
>
> An injury was suffered during the course of treatment to a part o[f] the body not directly involved in the treatment or proximate thereto; or
>
> A surgical procedure was performed on the wrong patient or the wrong organ, limb or part of a patient's body, then the burden of proving, by a preponderance of the evidence consisting of expert medical testimony or material from recognized medical texts or treatises, that the personal injury was caused by negligence remains with the plaintiff.

According to the use note following Nev. J.I. 6.17, this is the proper form of instruction when there is a jury question as to the existence of the enumerated factual circumstances.

present. In regard to these factual predicates, the legislature has, in effect, already determined that they ordinarily do not occur in the absence of negligence. Thus, we conclude, all a plaintiff need do to warrant an instruction under the statutory medical malpractice res ipsa loquitur rule is present some evidence of the existence of one or more of the factual predicates enumerated in the statute. If the trier of fact then finds that one or more of the factual predicates exist, then the presumption must be applied. This is the approach taken in Nev. J.I. 6.17 and Plaintiff's A. Accordingly, the district court should have given the proposed instruction if it was supported by evidence adduced at trial.

In the present case, Johnson presented evidence that Dr. Egtedar injured her colon and ureter during a spinal laminectomy and that Dr. Egtedar operated at the wrong level of her spine. These circumstances fit the factual predicates enumerated in NRS 41A.100(1)(d) and (e); therefore, Johnson's proposed jury instruction was supported by the evidence. Consequently, we hold that the district court erred in refusing Johnson's proposed jury instruction.

Dr. Egtedar nevertheless contends that Johnson has not properly preserved this issue for appeal. If a party requests an instruction and it is refused by the trial court, in order to preserve the issue for review, the party must object and distinctly state the grounds for the objection. NRCP 51; Village Development Co. v. Filice, 90 Nev. 305, 526 P.2d 83 (1974). A general objection such as "the instruction is proper" is generally inadequate to preserve the issue for appeal unless there is "plain error." Otterbeck v. Lamb, 85 Nev. 456, 456 P.2d 855 (1969); Downing v. Marlia, 82 Nev. 294, 417 P.2d 150 (1966). However, where counsel timely calls to the district court's attention the issues of law involved, a slight omission in compliance with NRCP 51 will not preclude appellate review. Tidwell v. Clark, 84 Nev. 655, 447 P.2d 493 (1968); see also Barnes v. Delta Airlines, Inc., 99 Nev. 688, 690 n.1, 669 P.2d 709, 710 n.1 (1983) ("by providing the trial judge with a citation to relevant legal authority in support of giving the instruction, the requirements of NRCP 51 were met, despite the fact that extensive legal arguments did not take place concerning the propriety of giving this instruction"). In view of the need for precision in establishing compliance with NRCP 51, objections made during conferences in chambers should be on the record. Carson Ready Mix, Inc. v. First Nat'l Bank, 97 Nev. 474, 477, 635 P.2d 276, 278 (1981).

In the present case, instructions were settled in chambers off the record. The parties then made a record of their objections. Johnson's objection, as it appears in the record, was, at most, only slightly more than a "general objection."[3] Nevertheless, upon review of the record in this case, including Dr. Egtedar's original objection to the proposed instruction, we conclude that the district court was adequately apprised of the issue of law involved and was given an opportunity to correct the error.[4] The requirements of NRCP 51 have, therefore, been met. *See Barnes,* 99 Nev. 688, 669 P.2d 709; *Tidwell,* 84 Nev. 655, 447 P.2d 493. Accordingly, we reject Dr. Egtedar's contention that the issue has not been preserved for appeal.[5]

*Proximate causation instruction*

Johnson contends that the district court erred in using a jury instruction for causation that included a "but for" test rather than Johnson's proposed instruction, which employed a "substantial factor" test for causation.[6] The actual and proposed instructions are based on Nev. J.I. 4.04 and Nev. J.I. 4.04A, respectively. The use note to Nev. J.I. 4.04 correctly points out that the "but for" instruction should be abandoned in favor of the "substantial factor" instruction in cases in which an injury may have had two causes, either of which, operating alone, would have been sufficient to cause the injury.

---

[3]In objecting to the district court's refusal to give the instruction, Johnson stated for the record: "Finally with regard to what has been marked as plaintiff's A as in Adam, the instruction under the circumstances of this case based upon Baji [California's *Book of Approved Jury Instructions*] 6.17[,] that that instruction is appropriate and should be given."

[4]Dr. Egtedar objected to Plaintiff's A on the grounds that the instruction did not contain all the elements of a classic res ipsa loquitur instruction and that there was no evidence adduced that the colon and ureter were parts of the body "not directly involved" in Johnson's back surgery or "proximate thereto."

[5]We also reject Dr. Egtedar's contention that the error, if there was any, was harmless. Here the error had the possible effect of shifting the burden of proof onto Johnson; thus, we conclude that the error was not harmless.

[6]Johnson's proposed instruction read:

A legal cause of injury, damage, loss, or harm is a cause which is a substantial factor in bringing about the injury, damage, loss, or harm.

Instead, the district court used Dr. Egtedar's instruction, which read:

A proximate cause of injury, damage, loss, or harm is a cause which, in natural and continuous sequence, produces the injury, damage, loss, or harm, and without which the injury, damage, loss, or harm, would not have occurred.

In the present case, each side argued its own theory of causation for each of Johnson's injuries and disputed the theory of causation of the other side. The two theories were presented as being mutually exclusive. For example, at trial it was argued that the damage to the colon was caused by diverticulitis *or* a surgical instrument wielded by Dr. Egtedar—but not both. Under the circumstances, it was proper for the district court to choose an instruction including a "but for" test of causation.

### Dr. George Schanz's opinion

Johnson next contends that the district court erred by not allowing Dr. Schanz, one of Johnson's treating physicians, to give his expert opinion during testimony at trial as to whether Dr. Egtedar caused the injuries to Johnson's colon, ureter, or dura. The scope of a witness' testimony and whether a witness will be permitted to testify as an expert witness are within the discretion of the trial court, and the trial court's ruling will not be disturbed unless there is an abuse of discretion. *See* Murphy v. F.D.I.C., 106 Nev. 26, 787 P.2d 370 (1990); Provence v. Cunningham, 95 Nev. 4, 588 P.2d 1020 (1979). In its decision to limit the scope of Dr. Schanz's testimony, the district court relied on Johnson's expert witness designation, which indicated that Dr. Schanz would testify as to his treatment of Johnson and other information in his medical records. We have reviewed the record, including Dr. Schanz's medical records, and conclude, as a matter of law, that Dr. Egtedar had notice that Johnson was planning to call Dr. Schanz for the purpose of asking his opinion as to whether Dr. Egtedar caused her injuries. Accordingly, we conclude that the district court erred by limiting Dr. Schanz's testimony in this regard.

### Pathology slides

Finally, Johnson contends that the district court erred by admitting pathology slides, offered to show diverticulitis of Johnson's colon, on the basis that they had not been properly authenticated. NRS 52.015 provides, in part: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence or other showing sufficient to support a finding that the matter in question is what its proponent claims." Dr. Soloway, the sponsoring witness, testified that the slides were recuts of the original blocks and that the original blocks were unavailable. Dr. Soloway also testified that

there was no significant difference between the recuts off the blocks and the original slides. Each slide had a label with Johnson's name and patient number. According to Dr. Soloway, the information gleaned from the pathology slides corresponded to the information in the pathology report. Finally, Dr. Soloway testified that, in his opinion, they were Johnson's pathology slides. On these facts, this case can be distinguished from Frias v. Valle, 101 Nev. 219, 698 P.2d 875 (1985), wherein this court held thermograms, purportedly showing plaintiff's soft-tissue injuries, to be insufficiently authenticated. In that case, the thermograms had been handed to the testifying expert by the plaintiff's counsel just prior to the expert's testifying in court, and the only indication that the thermograms were what they purported to be was that they were marked with the plaintiff's name. Accordingly, we hold that Johnson's contention that the pathology slides were not properly authenticated is without merit.[7]

## CONCLUSION

We conclude: (1) the district court erred in refusing Johnson's proposed jury instruction based on Nevada's statutory medical malpractice res ipsa loquitur rule and that the issue has been properly preserved for review by this court; (2) the district court did not err in giving the proximate cause jury instruction rather than the substantial factor jury instruction; (3) the district court abused its discretion in limiting the scope of Dr. Schanz's testimony; and (4) the district court did not err in admitting pathology slides over Johnson's objection that they had not been properly authenticated. We further conclude that these errors were not harmless. Accordingly, we vacate the judgment entered below and remand this case to the district court for a new trial consistent with this opinion.

---

[7]Due to the disposition of this case, we need not reach Johnson's contention that she was prejudiced by certain alleged misstatements of the bailiff to the jury.