SHARON BORN, APPELLANT, *v.* EUGENE EISENMAN, M.D., AND SHELDON FREEDMAN, M.D., RESPONDENTS.

No. 29303

September 1, 1998                    962 P.2d 1227

[Rehearing denied December 30, 1998]

*William E. Freedman, Chtd.,* and *Liesl K. Freedman,* Las Vegas, for Appellant.

*Galatz, Earl & Bulla,* Las Vegas, for Respondent Eisenman.

*Rawlings, Olson, Cannon, Gormley & Desruisseaux,* and *John D. Nitz,* Las Vegas, for Respondent Freedman.

## OPINION

*Per Curiam:*

Two surgeries were performed on appellant Sharon Born in January 1986. The first was a hysterectomy performed by respondent Dr. Eugene Eisenman during which complications developed because the right ureter had been ligated. The second surgery was performed by both Dr. Eisenman and respondent Dr. Sheldon Freedman to repair the ligated ureter. Born continued to experience pain in her abdomen and exploratory abdominal surgery was performed more than two years later. The surgeon who performed the exploratory surgery testified that he discovered that Born's

small intestine was almost severed and opined that it was probably transected or transfixed in the surgery to repair the ureter, eventually causing the small intestine damage. It was his opinion that other internal bodily tissue surrounded the perforated intestine and permitted it to function substantially as it would have without the opening.

At trial, the district court precluded Born from presenting evidence to establish the applicability of the res ipsa loquitur doctrine as now codified in NRS 41A.100. The district court also prohibited Born or her medical experts from referring to a case where a similar phenomenon was observed, but permitted the respondents to present testimony and argue that this condition could not have occurred as it is unknown to medical science.

We conclude that both rulings of the district court were erroneous. This compels us to reverse the judgment entered in this case and remand for a new trial.

## FACTS

On January 8, 1986, respondent Dr. Eugene Eisenman performed an abdominal hysterectomy (removal of the uterus) and left salpingo oophorectomy (surgical removal of a uterine tube and ovary) on appellant Sharon Born. Born was discharged on January 13, 1986. On January 16, 1986, Born presented to Sunrise Hospital emergency room complaining of severe pelvic pain. Dr. Eisenman ordered tests which indicated that Born's left ureter had a blockage.

Dr. Eisenman requested that respondent Dr. Sheldon Freedman, a board certified urologist, consult on Born's case. Dr. Freedman determined that Born's left ureter had been ligated by a suture at the time of the January 8, 1986 surgery. Dr. Freedman performed a left ureteroneocystostomy (surgical transplantation of the ureter to a different site in the bladder). During this procedure, Dr. Eisenman noticed that Born's right ovary was more diseased than originally thought and Dr. Eisenman performed a right oophorectomy (removal of the right ovary). Dr. Freedman and Dr. Eisenman testified that they both participated in the closure of the patient's abdomen after completing the surgery.

After the January 16, 1986 surgery, Born began complaining of pain. During the next two and one half years, Born continued to feel ill and specifically complained of pain in the left side of her abdomen. She sought treatment at both the UCLA Medical Center and the Mayo Clinic. On August 3, 1988, an exploratory laparotomy was performed by Dr. Donald Pointer and Dr. Richard Groom. During this procedure Dr. Pointer encountered a portion of the small bowel that was open. It was Dr. Pointer's opinion that the bowel had been transected or transfixed during the closure procedure performed by respondents on January 16, 1986. Dr.

Pointer found that through the body's natural healing process, the bowel had been sealed by the omentum (internal tissue). Later in August 1988, a procedure was performed to repair the opening in Born's small bowel.

Born filed a complaint against Dr. Eisenman for negligently ligating her ureter during her hysterectomy, and a second complaint against Drs. Eisenman and Freedman for transecting or transfixing her small bowel during the surgical procedure to repair the ligated ureter. The complaints were consolidated for pretrial discovery and trial.

On March 14, 1996, a pretrial conference was held, and the parties filed pretrial statements which set forth the facts each expected to prove at trial. Born stated in her pretrial memorandum the factual basis of the claims, and asserted that Dr. Eisenman was negligent in ligating her ureter when performing the hysterectomy, and that Drs. Eisenman and Freedman were negligent in transecting or transfixing the small bowel when the surgery to repair the ligated ureter was performed. Born asserted that the doctrine of res ipsa loquitur was applicable to both cases.

Drs. Eisenman and Freedman filed a joint pretrial memorandum and asserted that neither surgery was negligently performed. Respondents further asserted that if the small bowel was damaged, it was done by Dr. Pointer during the exploratory surgery and not during the second surgery performed by respondents, because it is difficult to identify the organs in an abdomen that has developed adhesions from prior surgeries. The respondents' primary defense was to dispute Born's condition as described by Dr. Pointer; they asserted that Born's "bowel could not have remained open and completely sealed by the omentum for a 2½ year period as is alleged by the Plaintiff. Such a theory has never been described in any medical literature, and for various medical reasons would appear to be impossible."

In their pretrial memorandum the respondents also asserted that the doctrine of res ipsa loquitur was not applicable to either surgery and that the district court should preclude reference to a medical case described in Edwards v. Quackenbush, 149 P.2d 809 (Colo. 1944), where a similar condition to the one alleged by Born was discussed. A motion in limine was also filed to prohibit any reference to the *Quackenbush* case. After the pretrial conference, the district court entered an order precluding Born from presenting a res ipsa loquitur theory to the jury, and also ordered that the *Quackenbush* case would not be referred to or mentioned at trial.

Trial commenced on April 15, 1996, and continued through April 24, 1996. Born's expert witness, Dr. Joseph Schmidt, testified that Born's allegations of medical negligence were valid. Dr. Schmidt opined that during the surgery to repair the ligated ureter

a suture was completely placed through the small bowel and within six to eight weeks after the surgery, the suture had worked all the way through the small bowel, leaving a gaping hole in the small bowel. The respondents' expert witnesses testified that if the suture had gone through the small bowel and then been tied off to close the incision, it would close the small bowel and cause an immediate bowel obstruction, and that such an obstruction would cause a distended abdomen, excruciating pain in the abdomen, projectile vomiting, and peritonitis. Because Born did not experience any of these extreme symptoms, respondents' experts stated that it was medically impossible to live for two and one half years in the condition Dr. Schmidt described. They further stated that such a development as Born alleged was unknown to medical science.

After a short deliberation, the jury found in favor of respondents on both of the consolidated cases. Born filed a motion for a new trial asserting that Dr. Eisenman's attorney, Neil Galatz, made derogatory comments about Born's counsel and medical experts at the trial and that the remarks, in all probability, were heard by the jury.

We conclude that the district court erred in denying the application of the doctrine of res ipsa loquitur to the facts of the two surgeries and in prohibiting Born from referring to the *Quackenbush* case.

## DISCUSSION

### Applicability of the res ipsa loquitur doctrine

The doctrine commonly known as res ipsa loquitur has been codified in NRS 41A.100(1)(d) and (e) and reads as follows:

> 1. Liability for personal injury or death is not imposed upon any provider of medical care based on alleged negligence in the performance of that care unless evidence consisting of expert medical testimony, material from recognized medical texts or treatises or the regulations of the licensed medical facility wherein the alleged negligence occurred is presented to demonstrate the alleged deviation from the accepted standard of care in the specific circumstances of the case and to prove causation of the alleged personal injury or death, except that such evidence is not required and a rebuttable presumption that the personal injury or death was caused by negligence arises where evidence is presented that the personal injury or death occurred in any one or more of the following circumstances:
>
> . . . .
>
> (d) An injury was suffered during the course of treatment to a part of the body not directly involved in the treatment or proximate thereto; or

(e) A surgical procedure was performed on the wrong patient or the wrong organ, limb or part of a patient's body.

This court recently decided the case of Johnson v. Egtedar, 112 Nev. 428, 915 P.2d 271 (1996), and had occasion to review whether a res ipsa loquitur instruction should be given when similar facts to the case at bar were presented. In that case, we stated that the more traditional res ipsa loquitur doctrine has been replaced by NRS 41A.100, and we explained that the circumstances upon which the instruction should be given is governed by that statute.

[A]ll a plaintiff need do to warrant an instruction under the statutory medical malpractice res ipsa loquitur rule is present *some* evidence of the existence of one or more of the factual predicates enumerated in the statute. *If the trier of fact then finds* that one or more of the factual predicates exist, then the presumption must be applied. This is the approach taken in Nev. J.I. 6.17.

*Id.* at 434, 915 P.2d at 274 (emphasis added).

The respondents claimed that the doctrine of res ipsa loquitur did not apply and the issue was argued at a pretrial conference. The district court ruled as a matter of law that the doctrine was inapplicable. This was error because the issue is largely determined on the facts presented and a plaintiff should be given the opportunity of eliciting evidence to satisfy one of the five factual predicates contained in NRS 41A.100. From the facts presented in the pretrial memorandums, it would appear that subsection (e) had been satisfied.

The pretrial memorandums indicated that Dr. Eisenman was performing surgery to remove Born's left ovary and uterus, and Born asserted that the left ureter was ligated in the process. When the surgery to repair the ligated left ureter and additional removal of the diseased right ovary was performed by respondents, Born alleged that her small bowel was transected or transfixed in the closure procedure. The evidence presented at trial supported the factual allegations made in the pretrial memorandums. In each surgery NRS 41A.100(1)(e) would apply because a surgical procedure was performed on the wrong organ or the wrong part of a patient's body. Because it was shown that the factual predicate existed for the admission of the res ipsa loquitur instruction, the district court was obligated to give the instruction, and the entry of the order precluding the applicability of the doctrine in this case was reversible error.

*Relevance of similar incident*

The theory of the defense was that severing the bowel with a suture could not have happened as the plaintiff claimed because: (1) the condition would have resulted in great pain and eventual death; and (2) a partially severed bowel could not be sealed off by the omentum. Respondents' medical experts testified to these facts and counsel for both physicians strenuously argued these points in their closing arguments. However, a similar event is reported in a Colorado Supreme Court case, Edwards v. Quackenbush, 149 P.2d 809 (Colo. 1944), and supports Born's position that her condition was medically possible. In *Quackenbush,* there was an allegation that a small portion of the ileum was cut during an appendectomy procedure. The *Quackenbush* case summarized the medical contentions as follows:

> [T]hat had the ileum been severed completely the early death of the plaintiff from peritonitis, caused by the consequent flooding of the abdominal cavity with fecal matter, would have been almost inevitable, and since she had not perished, expressed as their opinion, that the intestine had not been severed in the appendectomy. Plaintiffs met this theory with expert medical testimony to the effect, as it was said the second operation actually revealed, that through nature's protective processes, the upper end of the severed bowel, following the line of least resistance, had become adherent to the abdominal wall at the place of incision and there had formed a seal whereby the fecal matter from the organs above was discharged on the outside of the abdomen and that point, and that coincidentally the lower severed end of the intestine, being deprived of fluid, had sealed off and taken a position of repose.

*Id.* at 811-12. Likewise, Born's expert, Dr. Schmidt, testified that the omentum is the body's antibiotic because it is able to take away any products of infection and that it has the capability of surrounding the small bowel. If Dr. Schmidt had been permitted to mention the *Quackenbush* case, he would have testified that the medical facts of the two cases were similar, but "there is always some situation that makes one just a little bit different than the other."

We conclude that Born should have been able to refute with whatever competent evidence was available the assertion that it was impossible for her to have suffered the injury as alleged. The *Quackenbush* case was such evidence and Born should have been able to present it in her case-in-chief and use it when cross-exam-

ining the respondents' medical experts. While Dr. Schmidt candidly stated that the *Quackenbush* case was not identical, he should have been able to refer to its similarities when giving his expert opinion. An expert may base his opinion on relevant articles and reported cases in his field of expertise and cite such material as the basis for his opinion or conclusion. NRS 50.285. The district court abused its discretion by prohibiting Born from referring to the *Quackenbush* case, but permitting the respondents and their experts to assert that Born's condition was a phenomenon unknown to medical science.

*Improper remarks by defense counsel*

Born cites three prejudicial statements made by Mr. Galatz, attorney for Dr. Eisenman, and asserts that these comments were heard by the jury since Mr. Galatz sat next to the jury box. The alleged first instance occurred during the testimony of Dr. Lawrence Gardner when Born's counsel asked for a side bar. When Mr. Galatz rose from his chair, he said in a loud voice "this is outrageous" referring to Born's counsel asking for the side bar and the matter to be discussed with the court out of the hearing of the jury. Mr. Galatz allegedly repeated this phrase again as he approached the bench and a third time to the court. In each instance, Born's counsel states that they asked Mr. Galatz not to speak in such a manner to prevent the jury from hearing his comments. They claim that these requests were disregarded by Mr. Galatz.

During the testimony of Dr. Freedman the court called a recess so that counsel could meet in chambers to argue an evidentiary point. With several jurors still in the courtroom, Born states that Mr. Galatz referred to Born's counsel and co-counsel as "lying sons of bitches." As counsel approached the judge's desk in chambers to discuss the matter, Born further claims that Mr. Galatz again referred to her counsel as "lying sons of bitches," and that the court rebuked Mr. Galatz for using such profanity.

The third instance allegedly happened during the testimony of Dr. Schmidt, an expert witness for Born. Born states that during this testimony Mr. Galatz stated the word "whore" in a loud voice. Born's attorney objected to this statement and the objection was noted by the district court without ruling on it or taking any other prophylactic action. Born asserts that the jury surely heard this comment because the court clerk and the court reporter heard the remark. Mr. Galatz admits to making the "whore" remark, and stated during oral argument before this court that the comment may have been justified, but denies making the other comments attributed to him. He also argues that none of the statements were heard by the jury, thus no prejudice to Born resulted.

Making improper comments by counsel which may prejudice the jury against the other party, his or her counsel, or witnesses, is clearly misconduct by an attorney. Cases that have dealt with similar situations have uniformly condemned such statements as fundamentally prejudicial. In Davis v. Sams, 542 P.2d 943, 944 (Okla. 1975), one attorney used abusive language and made derogatory remarks concerning the other attorney's ancestry in the presence of several jurors. The court stated:

> The parties have a right, of which they may not be lawfully deprived, to have the facts of the case determined by a jury upon which the possibility of undue influence has not been exerted. Where an attorney attacks opposing counsel in the presence of the jury, it constitutes grounds for a new trial if it appears that prejudice may have resulted. The test in a matter of this sort is not necessarily that the misconduct complained of had a prejudicial effect upon the jury, but that it might have done so.

*Id.* (citations omitted).

The problem we face in assessing this claim of error is that contemporaneous objections were not made at each instance of alleged misconduct and the district court took no action when the objection was made to the "whore" comment. When such conduct is brought to the district court's attention by objection or motion for a mistrial, it is incumbent upon the district court to determine whether the remark was made and heard by the jury. If it cannot be established that the remark was made or that the jury heard it, the issue can be brought to an end. But if the jury has heard the improper comment, they should be asked if they can ignore it and, if they can, admonished to disregard the remark. However, if there is a reasonable indication that prejudice may have occurred to one party, the district court is obligated to declare a mistrial. Of course, the matter should be referred by the district court to the State Bar of Nevada pursuant to Canon 3(D)(2) of the Nevada Code of Judicial Conduct, if an attorney has committed misconduct in his or her courtroom.

In the case before us, we are in no position to conclude that the remarks were made, except for the comments Mr. Galatz admits to making. Whether the jury heard this or the other alleged comments is disputed. If we were not reversing this case on other grounds, we would remand this matter to the district court for a hearing to determine whether these remarks were made and heard by the jury. If the answer were in the affirmative, a new trial would be mandated because the improper remarks went to the heart of the credibility of Born's expert witness and counsel.

## CONCLUSION

The district court erred when it did not give a res ipsa loquitur instruction pertaining to both surgeries. It also was error for the district court to preclude reference to a medical case similar to Born's, especially since the respondents were claiming that such a condition as Born claimed to have suffered was unknown to medical science. Accordingly, we reverse and remand for a new trial consistent with the principles stated in this opinion.[1]

[1]The Honorable A. William Maupin, Justice, voluntarily recused himself from participation in the decision of this appeal.