ANNETTE SZYDEL AND KEVIN SZYDEL, INDIVIDUALLY, AND AS HUSBAND AND WIFE, APPELLANTS, *v.* BARRY MARKMAN, M.D., RESPONDENT.

No. 42663

August 11, 2005                                        117 P.3d 200

[Rehearing denied September 9, 2005]

[En banc reconsideration denied October 26, 2005]

*Murdock & Associates, Chtd.,* and *Robert E. Murdock,* Las Vegas, for Appellants.

*John H. Cotton & Associates, Ltd.,* and *Anthony J. D'Olio* and *Mara E. Fortin,* Las Vegas, for Respondent.

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, ROSE, J.:

In this appeal, we consider whether a medical malpractice action filed under Nevada's res ipsa loquitur statute, NRS 41A.100, which does not require expert testimony at trial, must include a medical expert affidavit, as mandated by NRS 41A.071. We conclude that the expert affidavit requirement does not apply when the malpractice action is based solely on the res ipsa loquitur doctrine.

### FACTS

On June 22, 2001, respondent Dr. Barry Markman performed a bilateral mastopexy, or breast lift, operation on appellant Annette Szydel. After Dr. Markman completed the procedure on the right breast, the nursing staff conducted an equipment count and in-

formed Dr. Markman that all sponges, needles, and other equipment used during the surgery were accounted for. Dr. Markman closed Szydel's right breast and continued the operation on her left breast. After Dr. Markman completed the procedure on her left breast, the nursing staff informed Dr. Markman that one of the surgical needles was unaccounted for.

Dr. Markman conducted a thorough search of Szydel's left breast but was unable to locate the missing needle. Following an initial search of the operating field and operating room, an x-ray was taken to see if the missing needle was located within the wound or had adhered to Szydel's body. Following the hospital's standard procedure in such situations, the hospital staff relocated Szydel to the recovery room to facilitate a thorough search of the operative suite and the surgical drapes. Dr. Markman informed Szydel of the missing needle and explained that, if necessary, she would be taken back into the operating room to remove the needle.

The standard x-ray did not indicate the presence of a foreign object. The search of the operative suite and Szydel's surgical drapes also failed to locate the missing needle. Dr. Markman then took Szydel to the fluoroscopy[1] suite to rule out any possibility that the needle was left inside Szydel's body. The results of the fluoroscopy showed that the needle was located in the middle of Szydel's right breast, indicating that the initial equipment count performed after the procedure on her right breast was incorrect. Szydel was taken back to the operative suite, and the needle was removed.

At the time of Szydel's surgery, a Nevada statute required that medical malpractice claims be submitted to a medical-legal screening panel before proceeding in district court. In June 2002, the Governor called a special session of Nevada's Legislature to "address a perceived medical malpractice insurance crisis" in Nevada.[2] During the special session, the Legislature enacted various measures intended to reform the way medical malpractice claims are handled, including completely eliminating the requirement for prescreening of medical malpractice cases by the medical-legal screening panel and requiring medical malpractice actions to be accompanied by an expert's affidavit.[3] However, the changes passed during the special session were not effective until October 1, 2002. As a result, claimants who filed a case with the panel before the effective date could elect to opt out of the new statutory scheme and continue under the prior prescreening statutes.[4]

---

[1]*Steadman's Medical Dictionary* 543 (5th unabridged ed. 1982).

[2]*Borger v. Dist. Ct.,* 120 Nev. 1021, 1023, 102 P.3d 600, 602 (2004).

[3]*Id.*; *see also* NRS 41A.016, *repealed by* 2002 Nev. Stat. Spec. Sess., ch. 3, § 69, at 25.

[4]*Borger,* 120 Nev. at 1024, 102 P.3d at 602-03; 2002 Nev. Stat. Spec. Sess., ch. 3, § 72, at 25-26.

Szydel filed a complaint with the medical-legal screening panel on September 27, 2002. Szydel elected to continue with the panel. The panel then informed Szydel by letter that her complaint was procedurally deficient and advised her that unless she corrected the deficiencies before December 4, 2002, her complaint would not be filed or submitted to the panel and any subsequent filing would be considered a new complaint.[5]

Szydel never corrected the procedural problems with her complaint, and the panel dismissed her claim without prejudice on January 9, 2003. Six months later, on June 6, 2003, Szydel and her husband filed a malpractice complaint in district court. Szydel's complaint alleged that in performing the mastopexy operation, Dr. Markman left a surgical needle inside Szydel's breast and, under Nevada's res ipsa loquitur statute, there is a rebuttable presumption of negligence. Dr. Markman moved to dismiss for failure to comply with NRS 41A.071, the new statutory provision requiring malpractice actions to be accompanied by a medical expert's affidavit.

NRS 41A.071 requires the dismissal of any medical malpractice action filed in district court without a medical expert's supporting affidavit. Szydel opposed Dr. Markman's motion and argued that because this was a retained foreign object case under NRS 41A.100, Nevada's res ipsa loquitur statute, which does not require expert testimony at trial, the affidavit requirement of NRS 41A.071 was inapplicable to her complaint.

After giving Szydel additional time to obtain an expert's affidavit, the district court dismissed Szydel's complaint without prejudice for her failure to comply with NRS 41A.071. Szydel appeals.

## DISCUSSION

*Standard of review and applicable law*

Szydel argues that the expert witness affidavit requirement of NRS 41A.071 does not apply in a retained foreign object case under NRS 41A.100(1)(a), the res ipsa loquitur statute. Our review of statutory provisions is de novo.[6] When construing a statute, the legislative intent is controlling.[7] Under the plain meaning rule,

---

[5]The exact wording of the panel's letter read:

> If the deficiencies are corrected to the satisfaction of the Division on or before *December 4, 2002,* the above date of receipt will be deemed the date of filing.
>
> If the deficiencies are not corrected on or before *December 4, 2002,* the complaint will not be filed or submitted to the panel and any subsequent submission is a new complaint.

[6]*Clark County v. Upchurch,* 114 Nev. 749, 753, 961 P.2d 754, 757 (1998).
[7]*Id.*

''[t]his court will not look beyond the plain language of the statute, unless it is clear that this meaning was not intended.''[8] When the language of a statute is clear on its face, this court will deduce the legislative intent from the words used.[9]

When two statutes are clear and unambiguous but conflict with each other when applied to a specific factual situation, an ambiguity is created and we will attempt to reconcile the statutes.[10] In doing so, we will attempt to read the statutory provisions in harmony, provided that this interpretation does not violate legislative intent.[11]

*Resolution of the conflict between NRS 41A.100 and NRS 41A.071*

We begin with the plain meaning rule and look to the meaning of language employed in each of the statutes.[12] NRS 41A.100(1) provides an exception to the basic requirement that expert testimony or evidence from a recognized medical text or treatise is required to prove negligence and causation in a medical malpractice lawsuit.[13] As this court has noted, NRS 41A.100(1) requires that a res ipsa loquitur instruction must be given when the circumstances and evidence so warrant.[14] In *Born v. Eisenman,* this court noted that:

> ''[A]ll a plaintiff need do to warrant an instruction under the statutory medical malpractice res ipsa loquitur rule is present *some* evidence of the existence of one or more of the factual predicates enumerated in the statute. *If the trier of fact then finds* that one or more of the factual predicates exist, then the presumption must be applied. This is the approach taken in Nev. J.I. 6.17.''[15]

NRS 41A.100(1)(a) sets forth the specific exception involved in this case and states that expert testimony is not required in in-

---

[8]*State v. Quinn,* 117 Nev. 709, 713, 30 P.3d 1117, 1120 (2001).

[9]*Cleghorn v. Hess,* 109 Nev. 544, 548, 853 P.2d 1260, 1262 (1993).

[10]*See Bowyer v. Taack,* 107 Nev. 625, 627, 817 P.2d 1176, 1177 (1991).

[11]*City Council of Reno v. Reno Newspapers,* 105 Nev. 886, 892, 784 P.2d 974, 978 (1989).

[12]*Quinn,* 117 Nev. at 713, 30 P.3d at 1120; *Cleghorn,* 109 Nev. at 548, 853 P.2d at 1262.

[13]*Banks v. Sunrise Hospital,* 120 Nev. 822, 850, 102 P.3d 52, 71 (2004) (MAUPIN, J., concurring in part and dissenting in part).

[14]*Born v. Eisenman,* 114 Nev. 854, 859, 962 P.2d 1227, 1230 (1998).

[15]*Id.* (quoting *Johnson v. Egtedar,* 112 Nev. 428, 434, 915 P.2d 271, 274 (1996)).

stances where a foreign object is unintentionally left in the patient's body following surgery.[16]

In contrast, NRS 41A.071 requires the dismissal of a medical malpractice action filed without an affidavit from a medical professional practicing in a substantially similar field.[17] As this court recently noted in *Borger v. District Court,* the plain language of NRS 41A.071 provides a threshold requirement for medical malpractice pleadings and does not pertain to evidentiary matters at trial, as does NRS 41A.100(1).[18] However, in a footnote, this court in *Borger* noted the apparent conflict between NRS 41A.071 and NRS 41A.100(1) but left the issue unresolved because NRS 41A.100(1) was not at play in that case.[19]

The language of these two statutes is unambiguous. However, when read together, the statutes are in conflict because NRS 41A.100(1) permits a jury to infer negligence without expert testimony at trial,[20] whereas NRS 41A.071 requires dismissal whenever the expert affidavit requirement is not met.[21] Accordingly, we agree with Szydel that requiring an expert affidavit at the start of a malpractice action, while permitting the plaintiff to proceed at trial without the need to produce expert testimony under the res ipsa loquitur doctrine, leads to an absurd result. Enforcing this requirement in a res ipsa case would do little to advance the primary goal

---

[16]NRS 41A.100(1)(a) provides:

> 1. Liability for personal injury or death is not imposed upon any provider of medical care based on alleged negligence in the performance of that care unless evidence consisting of expert medical testimony, material from recognized medical texts or treatises or the regulations of the licensed medical facility wherein the alleged negligence occurred is presented to demonstrate the alleged deviation from the accepted standard of care in the specific circumstances of the case and to prove causation of the alleged personal injury or death, except that such evidence is not required and a rebuttable presumption that the personal injury or death was caused by negligence arises where evidence is presented that the personal injury or death occurred in any one or more of the following circumstances:
> (a) A foreign substance other than medication or a prosthetic device was unintentionally left within the body of a patient following surgery.

[17]NRS 41A.071 provides:

> If an action for medical malpractice or dental malpractice is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit, supporting the allegations contained in the action, submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged malpractice.

[18]120 Nev. at 1028, 102 P.3d at 605.

[19]*Id.* at 1027 n.25, 102 P.3d at 604 n.25.

[20]*Born,* 114 Nev. at 859, 962 P.2d at 1230.

[21]*Borger,* 120 Nev. at 1029, 102 P.3d at 606.

of the expert affidavit requirement, which is to deter frivolous litigation and identify meritless malpractice lawsuits at an early stage.[22]

In *Palanque v. Lambert-Woolley,*[23] the New Jersey Supreme Court held that New Jersey's statutory affidavit requirement does not apply to "common knowledge" malpractice cases where " ' "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts." ' "[24] The New Jersey court noted that in such a case "whether a plaintiff's claim meets the [required] threshold of merit can be determined on the face of the complaint."[25] The court reasoned that

> requiring an affidavit of merit in such a case is not necessary to achieve the primary goal of the statute, that is, to weed out meritless malpractice lawsuits at an early stage and to prevent frivolous litigation. Indeed, recognition of the common knowledge exception allows meritorious claims to move forward without the added, and in those cases unnecessary, cost of hiring an expert to execute an affidavit when that expert will not testify at trial.[26]

For the same reasons, we conclude that requiring an expert affidavit in a res ipsa case under NRS 41A.100(1) is unnecessary. As this court has noted, the purpose of the expert affidavit requirement is to lower costs, reduce frivolous lawsuits, and ensure that medical malpractice actions are filed in good faith based upon competent expert medical opinion.[27] NRS 41A.071 was intended to substitute the medical-legal screening panel with a less expensive process that continues to deter frivolous lawsuits.[28] Undeniably, the res ipsa loquitur doctrine codified in NRS 41A.100 permits medical malpractice claims to go forward without expert testimony when the plaintiff is able to present some evidence that one or more of the factual situations enumerated in NRS 41A.100(1)(a)-(e) exist.[29]

---

[22]*See id.* ("[T]he underlying purpose of [NRS 41A.071] . . . is to ensure that such actions be brought in good faith based upon competent expert opinion. In this, the statute clearly works against frivolous lawsuits filed with some vague hope that a favorable expert opinion might eventually surface.").

[23]774 A.2d 501 (N.J. 2001).

[24]*Id.* at 506 (quoting *Hubbard ex rel. Hubbard v. Reed,* 774 A.2d 495, 499 (N.J. 2001) (quoting *Chin v. St. Barnabas Medical Center,* 734 A.2d 778, 785 (N.J. 1999))).

[25]*Id.*

[26]*Id.*

[27]*Borger,* 120 Nev. at 1029, 102 P.3d at 606.

[28]*Id.* at 1026, 102 P.3d at 604.

[29]*Born,* 114 Nev. at 859, 962 P.2d at 1230.

These are factual situations where the negligence can be shown without expert medical testimony, as when a foreign substance is found in the patient's body following surgery, NRS 41A.100(1)(a), or when a surgical procedure is performed on the wrong limb of the patient's body, NRS 41A.100(1)(e). It would be unreasonable to require a plaintiff to expend unnecessary effort and expense to obtain an affidavit from a medical expert when expert testimony is not necessary for the plaintiff to succeed at trial.[30]

At the same time the Legislature added NRS 41A.071, it amended the expert testimony requirement contained in NRS 41A.100(2) to add the "substantially similar" medical field language contained in NRS 41A.071.[31] This requirement that the testimony of a medical care provider be from someone in a substantially similar field relates back to the statement of what medical testimony is admissible under NRS 41A.100(1). The res ipsa loquitur exception is contained at the end of NRS 41A.100(1). If the Legislature had wanted NRS 41A.100 to fall within the ambit of NRS 41A.071, it had the opportunity to accomplish that goal while making the noted change. The fact that it declined to do so indicates to us that the Legislature did not want to extend the affidavit requirement to res ipsa loquitur cases.

When, however, a plaintiff files a res ipsa loquitur claim in conjunction with other medical malpractice claims that do not rely on the res ipsa loquitur doctrine, those other claims are subject to the requirements of NRS 41A.071 and must be supported by an appropriate affidavit from a medical expert.[32] In addition, any res ipsa claim filed without an expert affidavit must, when challenged by the defendant in a pretrial or trial motion, meet the prima facie requirements for a res ipsa loquitur case. Consequently, the plaintiff must present facts and evidence that show the existence of one or more of the situations enumerated in NRS 41A.100(1)(a)-(e). While the dissent disapproves this procedure because it is not specifically set forth in the statute, we believe it is only fair that a plaintiff filing a res ipsa loquitur case be required to show early in the litigation process that his or her action actually meets the nar-

---

[30]*Palanque,* 774 A.2d at 506.

[31]*See* 2002 Nev. Stat. Spec. Sess., ch. 3, § 12, at 9-10.

[32]Although Dr. Markman disputes the fact that his actions, as a matter of law, meet the requirements of res ipsa loquitur under NRS 41A.100(1)(a), the district court did not rule on the issue but dismissed Szydel's claim due to her failure to submit an affidavit as required by NRS 41A.071. The application of Nevada's res ipsa statute to the factual circumstances of Szydel's claim should be addressed by the district court if raised on remand. Consequently, we do not consider Dr. Markman's contention.

row res ipsa requirements. Of course, as recognized by the *Palanque* court, " 'the wise course of action in all malpractice cases would be for plaintiffs to provide affidavits even when they do not intend to rely on expert testimony at trial.' "[33]

Because we conclude that the expert affidavit requirement in NRS 41A.071 does not apply to a res ipsa loquitur case under NRS 41A.100(1), we reverse the district court's order dismissing the complaint and remand this case to the district court for proceedings consistent with this opinion. In light of our disposition, we do not reach appellant's other arguments.

GIBBONS, J., concurs.

HARDESTY, J., dissenting:

The majority improperly compares two independent legal concepts within NRS Chapter 41A, one a jurisdictional requirement and the other a rule of evidence, to circumvent the clear and unambiguous filing requirements that provide a district court with jurisdiction over a medical malpractice case. The affidavit requirement of NRS 41A.071 is jurisdictional in nature, intended to prevent frivolous lawsuits and ensure that medical malpractice cases are filed in good faith based on competent expert opinion.[1] NRS 41A.100, Nevada's limited codification of res ipsa loquitor, is a rule of evidence creating the rebuttable presumption that a defendant is negligent in medical malpractice cases.

Szydel's malpractice action focuses on the retained foreign object provisions of NRS 41A.100. Although retained foreign object cases frequently demonstrate clear examples of medical malpractice, that is not always the case. Szydel initially filed a complaint with the medical-legal screening panel, claiming that medical malpractice occurred based on the temporary retention of a needle during a bilateral mastopexy. The retained needle was removed before postoperative recuperation. The panel dismissed her claim without prejudice because she failed to procure an expert opinion stating that negligence occurred. After Szydel's case was dismissed by the medical-legal screening panel, Szydel filed a complaint in district court under NRS 41A.100. Again, however, Szydel failed to provide an expert opinion after the district court gave her several extensions of time to do so. Without an expert opinion, the district court dismissed the case. Szydel conceded that she was never able to procure an expert opinion to meet the requirements of the medical-legal screening panel or NRS 41A.071. In spite of Szydel's futile efforts to

---

[33]774 A.2d at 507 (quoting *Hubbard*, 774 A.2d at 501).

[1]*See Borger v. Dist. Ct.,* 120 Nev. 1021, 1029, 102 P.3d 600, 606 (2004).

procure an expert opinion, the majority breathes new life into a case that lacks merit and was properly dismissed under NRS 41A.071.

General rules of statutory construction apply in this instance. It is well-established that the language of a statute should be given its plain meaning unless, in so doing, the spirit of the act is violated.[2] "Thus, when 'a statute is clear on its face, a court may not go beyond the language of the statute in determining the legislature's intent.'"[3] An ambiguous statute, however, which "'is capable of being understood in two or more senses by reasonably informed persons,'" or one that otherwise does not speak to the issue before the court, may be examined through reason and consideration of public policy to determine the legislature's intent.[4] "'The meaning of the words used may be determined by examining the context and the spirit of the law or the causes which induced the legislature to enact it.'"[5] In addition, "when the legislature enacts a statute, this court presumes that it does so 'with full knowledge of existing statutes relating to the same subject.'"[6] Further, "when separate statutes are potentially conflicting, [this court] attempt[s] to construe both statutes in a manner to avoid conflict and promote harmony."[7]

NRS 41A.071 is clear and unambiguous, providing that "the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit." The plain meaning of the statute clearly intends to prevent fraudulent claims from being filed. Generally, in res ipsa loquitor cases involving retained foreign objects, the affidavit requirement of NRS 41A.071 should be relatively easy to satisfy; however, if the affidavit requirement is not met, the case must be dismissed under NRS 41A.071.

My colleagues reach a conclusion that NRS 41A.071 and NRS 41A.100, when read together, conflict because NRS 41A.100(1) permits a jury to infer negligence without any expert testimony at trial, whereas NRS 41A.071 requires dismissal whenever the expert affidavit requirement is not met.

[2]*University Sys. v. Nevadans for Sound Gov't,* 120 Nev. 712, 731, 100 P.3d 179, 193 (2004).

[3]*Id.* (quoting *McKay v. Bd. of Supervisors,* 102 Nev. 644, 648, 730 P.2d 438, 441 (1986)).

[4]*Id.* (quoting *McKay,* 102 Nev. at 649, 730 P.2d at 442); *Clark County v. Sun State Properties,* 119 Nev. 329, 334, 72 P.3d 954, 957 (2003).

[5]*University Sys.,* 120 Nev. at 731, 100 P.3d at 193 (quoting *McKay,* 102 Nev. at 650-51, 730 P.2d at 443).

[6]*State, Div. of Insurance v. State Farm,* 116 Nev. 290, 295, 995 P.2d 482, 486 (2000) (quoting *City of Boulder v. General Sales Drivers,* 101 Nev. 117, 118-19, 694 P.2d 498, 500 (1985)).

[7]*Beazer Homes Nevada, Inc. v. Dist. Ct.,* 120 Nev. 575, 587, 97 P.3d 1132, 1140 (2004).

The affidavit requirement is not susceptible to two meanings, and it cannot be read to say that the need for an affidavit in a res ipsa case has been excused or not addressed by our Legislature. An affidavit is required in all cases.

The plain meaning of both statutes is not in conflict and can be harmonized. NRS 41A.071 is a procedural rule that requires a sworn affidavit from a medical professional before the district court may entertain a medical malpractice claim. Once a party has met that initial requirement, the district court must later determine during trial whether, as a matter of law, the res ipsa loquitor rule in NRS 41A.100 applies, which allows the plaintiff to proceed to the jury without producing expert testimony regarding negligence and causation on the part of the defendant.

Without applying the affidavit requirement of NRS 41A.071 to res ipsa loquitor cases, even the most frivolous of res ipsa claims could be brought to district court. Further, the purpose behind NRS 41A.071, to reduce frivolous lawsuits that have "some vague hope that a favorable expert opinion might eventually surface,"[8] would be thwarted. It is unlikely that the Legislature intended cases to be excluded from a review for frivolity under NRS 41A.071. Instead, the Legislature more likely intended that a party bringing a res ipsa case would establish, through a medical expert opinion, that the party's case is not frivolous, regardless of whether the party would produce expert opinion evidence later in trial. The approach taken by the majority runs contrary to the goals of NRS 41A.071 because, by the time a decision is made on whether a party is entitled to the res ipsa instruction, a substantial amount of time, energy, and money in discovery and trial is expended.

The majority suggests a remedy if an expert opinion is not required with the complaint filing and the res ipsa loquitor instruction is later denied. They conclude that the case must be dismissed. Nothing in the statutory structure of NRS Chapter 41A provides for such a procedure or dismissal. The better approach is to require the medical affidavit initially, even if a party does not intend to rely later on expert testimony at trial.

For these reasons, I would affirm the dismissal by the district court.

---

[8]*Borger,* 120 Nev. at 1029, 102 P.3d at 606.