134 Nev., Advance Opinion 79

# IN THE SUPREME COURT OF THE STATE OF NEVADA

SUSAN DOLORFINO,
Appellant,
vs.
UNIVERSITY MEDICAL CENTER OF
SOUTHERN NEVADA; AND ROBERT
HARPER ODELL, JR.,
Respondents.

No. 72443

FILED

OCT 04 2018



ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order dismissing a medical malpractice suit. Eighth Judicial District Court, Clark County; Joseph T. Bonaventure, Senior Judge.

*Reversed and remanded.*

Terry Law Group, PC, and Zoe K. Terry, Las Vegas,
for Appellant.

John H. Cotton & Associates, Ltd., and John H. Cotton, Michael D. Navratil, and Vincent J. Vitatoe, Las Vegas,
for Respondent Robert Harper Odell, Jr.

Pitegoff Law Office and Jeffrey I. Pitegoff, Las Vegas,
for Respondent University Medical Center of Southern Nevada.

BEFORE CHERRY, PARRAGUIRRE and STIGLICH, JJ.

18-38877

By the Court, STIGLICH, J.:

This medical malpractice suit requires us to determine whether a tooth injury is "directly involved" or "proximate" to a hysterectomy that required an endotracheal intubation to safely anesthetize the patient. NRS 41A.100(1)(d). We hold that it is not. Therefore, the patient was not required to attach a medical expert's affidavit to her complaint, so the district court erred in dismissing her suit. Accordingly, we reverse and remand.

*FACTS AND PROCEDURAL HISTORY*

This case stems from a tooth injury sustained by appellant Susan Dolorfino during an emergency hysterectomy she underwent at University Medical Center (UMC). That injury was allegedly caused by the actions of respondent Dr. Robert Harper Odell, Jr., an anesthesiologist, who performed an endotracheal intubation on Dolorfino. That procedure involves passing a plastic tube through the patient's mouth and trachea to maintain an open airway while the patient is under general anesthesia. Dolorfino claims that her injury occurred during a power outage and subsequent blackout, during which Dr. Odell dropped a medical instrument onto Dolorfino's tooth. Prior to surgery, Dolorfino had signed a consent form acknowledging that "injury to teeth/dental appliances" was a risk associated with general anesthesia.

Dolorfino sued Dr. Odell and UMC to recover for damages to her tooth. Dr. Odell and UMC moved for summary judgment, arguing that Dolorfino's complaint must be dismissed pursuant to NRS 41A.071 because it was not accompanied by a supporting affidavit from a medical expert. Treating those motions as motions to dismiss, the district court held that

the NRS 41A.071 affidavit requirement applied to all of Dolorfino's claims. Because Dolorfino's complaint lacked such an affidavit, the court dismissed her case.

Dolorfino appeals.

## DISCUSSION

This appeal presents a single issue: Whether Dolorfino's failure to attach a medical expert's affidavit to her complaint required dismissal of the entirety of her suit pursuant to NRS 41A.071. We review that legal issue de novo while "recogniz[ing] all factual allegations in [the] complaint as true and draw[ing] all inferences in [the plaintiff's] favor." *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008) (describing the standard of review following a district court's dismissal).

NRS 41A.071 requires medical malpractice suits to be dismissed if the complaint is filed without a supporting affidavit from a medical expert. "[T]he legislative history of NRS 41A.071 demonstrates that it was enacted to deter baseless medical malpractice litigation, fast track medical malpractice cases, and encourage doctors to practice in Nevada while also respecting the injured plaintiff's right to litigate his or her case and receive full compensation for his or her injuries." *Zohar v. Zbiegien*, 130 Nev. 733, 738, 334 P.3d 402, 405-06 (2014). "NRS 41A.071's affidavit requirement was implemented to lower costs, reduce frivolous lawsuits, and ensure that medical malpractice actions are filed in good faith based upon competent expert medical opinion." *Id.* at 738, 334 P.3d at 405 (internal quotation marks omitted).

However, NRS 41A.071's affidavit requirement does not apply "in a res ipsa case under NRS 41A.100(1)." *Szydel v. Markman*, 121 Nev. 453, 459, 117 P.3d 200, 204 (2005). "Res ipsa" is short for "res ipsa loquitur,"

Supreme Court
of
Nevada

(O) 1947A

3

meaning "the [thing] speaks for itself," a common law doctrine that applies when "the facts or circumstances accompanying an injury may be such as to raise a presumption, or at least permit an inference, of negligence on the part of the defendant." *Las Vegas Hosp. Ass'n v. Gaffney*, 64 Nev. 225, 233, 180 P.2d 594, 598 (1947) (internal quotation marks omitted). Within the medical malpractice context, our Legislature has replaced common law res ipsa with NRS 41A.100, which enumerates certain "factual circumstances" as those that "do not occur in the absence of negligence." *Johnson v. Egtedar*, 112 Nev. 428, 433-34, 915 P.2d 271, 274 (1996). The factual predicate relevant to this case is NRS 41A.100(1)(d): "An injury was suffered during the course of treatment to a part of the body not directly involved in the treatment or proximate thereto."

Dolorfino presents a straightforward argument: Her tooth was not "directly involved" or "proximate" to her hysterectomy, so her case qualifies as a res ipsa case under NRS 41A.100(1)(d) and is, therefore, exempt from the NRS 41A.071 affidavit requirement.[1]

UMC attempts to reframe the issue. While Dolorfino's tooth was not "directly involved" or "proximate" to her hysterectomy, UMC argues that the tooth was "proximate" to her endotracheal intubation, which necessarily accompanied her hysterectomy. Along similar lines, Dr. Odell warns that accepting Dolorfino's position would mean that anesthesiologists will seldom be protected by the NRS 41A.071 affidavit requirement.

---

[1]We decline to address Dolorfino's additional arguments on appeal because this issue is dispositive. *See First Nat'l Bank of Nev. v. Ron Rudin Realty Co.*, 97 Nev. 20, 24, 623 P.2d 558, 560 (1981) ("In that our determination of the first issue is dispositive of this case, we do not reach the second issue . . . .").

This court has addressed the scope of NRS 41A.100(1)(d) on several occasions. In *Johnson v. Egtedar*, this court held that injuries to the colon and ureter during a spinal laminectomy "fit the factual predicates enumerated in NRS 41A.100(1)(d)." 112 Nev. 428, 434, 915 P.2d 271, 275 (1996). In *Born v. Eisenman*, this court applied res ipsa to two scenarios, one involving a ligation to the ureter during surgery to a patient's ovary and uterus, and another involving a bowel injury that occurred during surgery upon a patient's ureter and ovary. 114 Nev. 854, 855, 859, 962 P.2d 1227, 1228, 1230 (1998). Although in *Born* this court applied NRS 41A.100(1)(*e*) to both scenarios, *id.* at 858-59, 962 P.2d at 1230, this court reexamined *Born* in a subsequent opinion and noted that NRS 41A.100(1)(*d*) could also have applied in those situations. *Banks v. Sunrise Hosp.*, 120 Nev. 822, 833, 102 P.3d 52, 60 (2004).

This court has also specifically addressed a scenario wherein a patient sought to recover under NRS 41A.100(1)(d) for an injury caused by anesthesia. *Id.* In *Banks*, a patient suffered permanent brain damage during a rotator cuff surgery. *Id.* at 827-28, 102 P.3d at 56-57. The brain damage resulted from a drop in the patient's blood pressure, which was caused by an error during anesthesia. *Id.* at 828, 102 P.3d at 57. The legal issue was whether this scenario merited a res ipsa jury instruction pursuant to NRS 41A.100(1)(d). *Id.* at 832, 102 P.3d at 59. A five-justice majority reasoned that "[t]he brain is not directly or proximately related to the rotator cuff surgery," so an NRS 41A.100(1)(d) instruction was appropriate. *Id.* at 833, 102 P.3d at 60. In so holding, the majority rejected the position of two dissenting justices that general anesthesia was "part and parcel of the surgical treatment of the patient" and sedation "constitutes treatment

directly involving the brain." *Id.* at 850, 102 P.3d at 71 (Maupin, J., dissenting).[2]

The foregoing cases demonstrate that this court has interpreted the phrase "directly involved in the treatment or proximate thereto" in NRS 41A.100(1)(d) quite narrowly. Moreover, in holding that a brain injury is not "directly or proximately related to [a] rotator cuff surgery," *Banks*, 120 Nev. at 833, 102 P.3d at 60, this court indicated that parts of the body targeted by anesthesia are not "directly involved" with or "proximate" to surgery upon an unrelated part of the body.

We are unpersuaded by Dr. Odell's argument that anesthesiologists will suffer dire consequences if we apply NRS 41A.100(1)(d) to this scenario. The law in this area has been settled for decades. For over 20 years, this court has interpreted "directly involved" and "proximate thereto" narrowly within the context of NRS 41A.100(1)(d). *Johnson*, 112 Nev. at 434, 915 P.2d at 275. In 2004, we applied NRS 41A.100(1)(d) to injuries resulting from anesthesia by concluding that such injuries are "not directly or proximately related" to the underlying surgery. *Banks*, 120 Nev. at 833, 102 P.3d at 60. We will not overturn these precedents unless "compelling reasons" require us to do so. *Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008). We see no such reasons here. Thus, in accordance with *Banks*, we hold that Dolorfino's tooth injury was not "directly involved" or "proximate" to her hysterectomy, so the

---

[2]UMC and Dr. Odell attempt to distinguish *Banks* in that the plaintiff in *Banks* submitted an affidavit of a medical expert with his complaint, whereas Dolorfino did not. That distinction is inconsequential in light of *Szydel*, wherein this court held that the affidavit requirement does not apply to "a res ipsa case under NRS 41A.100(1)." 121 Nev. at 459, 117 P.3d at 204.

district court erred in dismissing her complaint for lack of a medical expert's supporting affidavit. *Szydel*, 121 Nev. at 459, 117 P.3d at 204.

## CONCLUSION

For purposes of NRS 41A.100(1)(d), a tooth injury is not "directly involved" or "proximate" to a hysterectomy. Therefore, Dolorfino was not required to attach to her complaint a supporting affidavit from a medical expert, so dismissal of her suit was unwarranted. Accordingly, we reverse and remand for further proceedings.

_____, J.
Stiglich

We concur:

_____, J.
Cherry

_____, J.
Parraguirre