136 Nev., Advance Opinion 39

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ESTATE OF MARY CURTIS,
DECEASED; LAURA LATRENTA, AS
PERSONAL REPRESENTATIVE OF
THE ESTATE OF MARY CURTIS; AND
LAURA LATRENTA, INDIVIDUALLY,
Appellants,
vs.
SOUTH LAS VEGAS MEDICAL
INVESTORS, LLC, D/B/A LIFE CARE
CENTER OF SOUTH LAS VEGAS,
F/K/A LIFE CARE CENTER OF
PARADISE VALLEY; SOUTH LAS
VEGAS INVESTORS LIMITED
PARTNERSHIP; LIFE CARE CENTERS
OF AMERICA, INC.; AND CARL
WAGNER, ADMINISTRATOR,
Respondents.

No. 77810

**FILED**

JUL 09 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order granting summary judgment in a tort action. Eighth Judicial District Court, Clark County; Michael Villani, Judge.

*Affirmed in part, reversed in part, and remanded.*

Saltzman Mugan Dushoff and Michael D. Davidson, Las Vegas; Bossie, Reilly & Oh, P.C., and Melanie L. Bossie, Scottsdale, Arizona; Wilkes & McHugh, P.A., and Bennie Lazzara, Jr., Tampa, Florida,
for Appellants.

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Joel D. Henriod, Abraham G. Smith, and Matthew R. Tsai, Las Vegas; Lewis Brisbois Bisgaard & Smith and S. Brent Vogel, Las Vegas,
for Respondents.

BEFORE GIBBONS, STIGLICH and SILVER, JJ.

*OPINION*

By the Court, SILVER, J.:

NRS 41A.071 provides that if a party files an action for professional negligence against a provider of health care without a supporting medical expert affidavit, the district court must dismiss the action. In *Szydel v. Markman*, 121 Nev. 453, 459, 117 P.3d 200, 204 (2005), we adopted the "common knowledge" exception to the affidavit requirement for claims falling under NRS 41A.100 (the *res ipsa loquitur* statute). The common knowledge exception provides that where lay persons' common knowledge is sufficient to determine negligence without expert testimony, the affidavit requirement does not apply. For the reasons stated below, we conclude that the common knowledge exception can also be applied to determine whether a claim that appears to sound in professional negligence, and does not fall under NRS 41A.100, actually sounds in ordinary negligence and is therefore not subject to NRS 41A.071.

In this appeal, we consider whether a nurse's mistake in administering a drug to one patient, when the drug was prescribed to a different patient, as well as the alleged failure to thereafter monitor the patient, are matters of professional negligence subject to NRS 41A.071's affidavit requirement or a matter of ordinary negligence that would not require a supporting affidavit under the common knowledge exception. We conclude that the exception applies in this case to the drug's administration, as lay jurors could understand that mistakenly administering a drug to the wrong patient is negligent without the benefit of expert testimony. Thus, any claim based solely on that act would not be subject to dismissal under

NRS 41A.071 for failing to attach a supporting medical expert affidavit. But we conclude that the other allegation of failing to monitor the patient after administering the drug is subject to NRS 41A.071's affidavit requirement. We therefore affirm in part and reverse in part the district court's dismissal order and remand for further proceedings in line with this decision.

## FACTS AND PROCEDURAL HISTORY

Respondent Life Care Center of South Las Vegas (LCC) is a nursing home. Licensed nurse Ersheila Dawson worked at LCC during the time Mary Curtis, appellant Laura Latrenta's mother, was a resident at LCC. Curtis was admitted as a patient to LCC, and LCC was to render professional services necessary to maintain Curtis's physical and mental health. While taking care of multiple patients, Nurse Dawson mistakenly administered to Curtis 120 milligrams of morphine that had been prescribed for another patient. Nurse Dawson soon realized her mistake and reported it to her supervisor. Acting on a physician's orders, LCC administered Narcan, another drug, to Curtis to counteract the morphine. But LCC decided not to send Curtis to the hospital at that time. LCC monitored Curtis's vital signs and recorded Curtis as "alert and verbally responsive" at 5 p.m. the day the morphine was administered. The following morning at 11 a.m., when Latrenta arrived to check on Curtis, she found Curtis unresponsive. Curtis was transported to the hospital and passed away three days later. Her death certificate lists morphine intoxication as the cause of death.

Latrenta, as both Curtis's heir and the personal representative of Curtis's estate (collectively, the Estate), sued LCC. The Estate asserted claims against LCC for (1) abuse and neglect of an older person, (2) wrongful death (brought by Curtis's estate), (3) wrongful death (brought by Latrenta), and (4) tortious breach of the implied covenant of good faith and fair dealing.

The Estate did not explicitly assert any claim for professional negligence, did not name Nurse Dawson as a defendant, and did not file an expert affidavit under NRS 41A.071.

The complaint alleges that Nurse Dawson administered the wrong medication to Curtis and thereafter failed to properly monitor or treat Curtis, both of which led to Curtis's death. The Estate alleges that LCC's negligent mismanagement, understaffing, and operation of the nursing home led to the erroneous administration of morphine and the failure to treat and monitor Curtis as the morphine took her life. The complaint specifically alleges that LCC had a duty to properly train and supervise its staff to act with the level of knowledge, skill, and care ordinarily used under similar circumstances by similarly trained and experienced licensed nurses.

LCC moved for summary judgment, and the district court granted the motion, finding that even though the Estate made direct claims against LCC and otherwise borrowed language from the elder abuse statute, the gravamen of the complaint's allegations sounded in professional negligence. Accordingly, the district court concluded that the Estate was required to file an expert affidavit and its failure to do so rendered the complaint void ab initio. The Estate appeals, arguing (1) it is excused from complying with NRS 41A.071 because it asserted claims directly against LCC; (2) it is excused from complying with NRS 41A.071 because the allegations in the complaint sound in ordinary negligence, not professional negligence; (3) that requiring an expert affidavit here defeats the purpose of Nevada's elder abuse statute, NRS 41.1395; and (4) that the allegations in the complaint fall within Nevada's *res ipsa loquitur* statute, thereby avoiding the affidavit requirement.

*DISCUSSION*

We "review a district court order granting summary judgment de novo." *Boesiger v. Desert Appraisals, LLC*, 135 Nev. 192, 194, 444 P.3d 436, 439 (2019). Similarly, we review issues of statutory construction de novo. *Pub. Agency Comp. Tr. v. Blake*, 127 Nev. 863, 866, 265 P.3d 694, 696 (2011).

NRS 41A.015 defines professional negligence as "the failure of a provider of health care, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care."[1] In turn, NRS 41A.071 provides that "[i]f an action for professional negligence is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without [a supporting] affidavit" from a medical expert. NRS 41A.071 was intended "to lower costs, reduce frivolous lawsuits, and ensure that medical malpractice actions are filed in good faith based upon competent expert medical opinion." *Washoe Med. Ctr. v. Second Judicial Dist. Court*, 122 Nev. 1298, 1304, 148 P.3d 790, 794 (2006) (quoting *Szydel v. Markman*, 121 Nev. 453, 459, 117 P.3d 200, 204 (2005)).

*Direct liability claims against a nursing home facility do not excuse compliance with NRS 41A.071's affidavit requirement*

As a preliminary matter, the Estate claims that LCC's direct managerial decisions were the real cause behind both nurse Dawson administering an incorrect medication and LCC's failure to monitor Curtis thereafter. The Estate argues that these allegations do not require an expert affidavit, as the allegations constitute a direct liability claim against

---

[1]NRS 41A.017 establishes that a licensed nurse falls within the definition of "provider of health care."

 

LCC, not Nurse Dawson, and they sound in ordinary negligence, not professional negligence. We disagree.

A claim of negligent hiring, supervision or training escapes NRS 41A.071's affidavit requirement "where the underlying facts of the case do not fall within the definition of [professional negligence]."[2] *Szymborski v. Spring Mountain Treatment Ctr.*, 133 Nev. 638, 647, 403 P.3d 1280, 1288 (2017). In determining whether such a claim sounds in ordinary or professional negligence, we "must look to the gravamen or substantial point or essence of each claim rather than its form." *Id.* at 643, 403 P.3d at 1285 (internal quotation marks omitted). Where the allegations underlying negligent hiring claims are inextricably linked to professional negligence, courts have determined that the negligent hiring claim is better categorized as vicarious liability rather than an independent tort. *See, e.g., Am. Registry of Pathology v. Ohio Cas. Ins. Co.*, 461 F. Supp. 2d 61, 70 (D.D.C. 2006) (addressing claims that an entity negligently hired a medical professional based on allegations that the professional negligently administered medical tests and concluding that, "[i]n that sense, the negligent hiring claims are similar to the vicarious liability claims because they seek to hold the employer responsible for the negligent acts of the employee"); *Holmes Reg'l Med. Ctr., Inc. v. Dumigan*, 151 So. 3d 1282, 1285 (Fla. Dist. Ct. App. 2014) (citing *Martinez v. Lifemark Hosp. of Fla., Inc.*, 608 So. 2d 855, 856-57 (Fla. Dist. Ct. App. 1992), for the proposition that "the case should be handled under the [Florida Medical Malpractice Act]

---

[2]The 2015 Legislature amended NRS 41A.071 to substitute "professional negligence" for "medical malpractice" and repealed NRS 41A.009 (defining medical malpractice). *See* 2015 Nev. Stat., ch. 439, §§ 6, 12, at 2527, 2529. Thus, for consistency, we use the term "professional negligence."

because the plaintiff's asserted claims of negligent hiring and retention, fraud and misrepresentation, and intentional tort were necessarily and inextricably connected to negligent medical treatment").

This reasoning is convincing, and we therefore clarify that negligent hiring, training, and supervision claims cannot be used to circumvent NRS Chapter 41A's requirements governing professional negligence lawsuits when the allegations supporting the claims sound in professional negligence.[3] *See Am. Registry of Pathology*, 461 F. Supp. 2d at 70; *Holmes*, 151 So. 3d at 1285; *Martinez*, 608 So. 2d at 856-57. Applying that rule here, the Estate's complaint alleged that LCC "had a duty to properly train and supervise [its] staff and employees," i.e., that LCC negligently trained and supervised its nurses, and it further alleged that the breach of that duty caused Curtis's death. Thus, critically, if the underlying negligence did not cause Curtis's death, no other factual basis was alleged for finding LCC liable for negligent staffing, training, and budgeting. We conclude that the Estate's claims are inextricably linked to the underlying negligence, and if the underlying negligence is professional negligence, as addressed below, the Estate's complaint is subject to NRS 41A.071's affidavit requirement.

*Whether the allegations in the complaint sound in ordinary negligence or professional negligence*

The Estate argues that accidentally administering a drug to the wrong patient and the subsequent failure to monitor the patient are matters of ordinary negligence, not professional negligence. First we address the

---

[3]We have previously recognized this, albeit in an unpublished order. *See Zhang v. Barnes*, Docket No. 67219, at *17-18 (Order Affirming in Part, Reversing in Part, and Remanding, Sept. 12, 2016).

difference between the two in the context of NRS Chapter 41A, and we adopt the common knowledge exception to the medical affidavit requirement in NRS 41A.071. Then we address each claim in turn.

In order to determine whether a claim sounds in "professional negligence," courts must evaluate whether the claim "involve[s] medical diagnosis, judgment, or treatment, or [is] based on [the] performance of nonmedical services." *Szymborski*, 133 Nev. at 641, 403 P.3d at 1284. If the alleged breach involves "medical judgment, diagnosis, or treatment," it is likely a claim for medical malpractice. *Id.* at 642, 403 P.3d at 1284. Thus, "if the jury can only evaluate the plaintiff's claim after presentation of the standards of care by a medical expert, then it is a [professional negligence] claim." *Id.* "If, on the other hand, the reasonableness of the health care provider's actions can be evaluated by jurors on the basis of their common knowledge and experience, then the claim is likely based in ordinary negligence." *Id.* at 642, 403 P.3d at 1285. The distinction between professional and ordinary negligence can be subtle, and we look to the "gravamen or substantial point or essence" of each claim to make the necessary determination. *Id.* at 642-43, 403 P.3d at 1285 (internal quotation marks omitted).

*Szymborski* does not address foreseeable situations where the negligence alleged involves a medical diagnosis, judgment, or treatment but the jury is capable of evaluating the reasonableness of the health care provider's actions using common knowledge and experience. This gap hints at a narrow exception to the medical affidavit requirement in professional negligence cases: that an affidavit may not be required if the alleged negligence does not require expert testimony to evaluate. In other jurisdictions, this "common knowledge" exception applies where the

SUPREME COURT
OF
NEVADA

(O) 1947A

8

carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience, and the claim can be resolved without expert testimony. *See, e.g., Trowell v. Providence Hosp. & Med. Ctrs., Inc.*, 918 N.W.2d 645, 651 (Mich. 2018) (explaining that a hospital employee's failure to take corrective action in response to a known danger was an allegation of ordinary negligence that a jury, relying only on common knowledge and experience, could assess); *Dailey v. Methodist Med. Ctr.*, 790 So. 2d 903, 918 (Miss. Ct. App. 2001) ("Generally, a plaintiff must have shown medical negligence by expert testimony, unless the negligence is within the common knowledge of a layperson."); *Bowman v. Kalm*, 179 P.3d 754, 756 (Utah 2008) (recognizing a limited "common knowledge exception" to the general requirement that medical malpractice complaints must be supported with medical expert testimony that applies where the causal link between the injury and the negligence is apparent to a person with no medical training); *Beverly Enters.-Va., Inc. v. Nichols*, 441 S.E.2d 1, 3 (Va. 1994) ("In certain rare instances, . . . expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience."). The narrow exception applies only to situations involving negligence that is apparent without *any* expert testimony and does not apply to situations where the professional exercises medical judgment. *See Smith ex rel. Smith v. Gilmore Mem'l Hosp., Inc.*, 952 So. 2d 177, 180-82 (Miss. 2007) (addressing a nurse's failure to inform a patient's family that the doctor had operated on the wrong body part and concluding expert testimony was required to determine whether the nurse's judgment call breached the standard of care).

For example, the Superior Court of New Jersey, Appellate Division, held that a pharmacist filling a prescription with the wrong drug falls within the "common knowledge" exception to that state's expert affidavit requirement. *Bender v. Walgreen E. Co.*, 945 A.2d 120, 122-23 (N.J. Super. Ct. App. Div. 2008); *see also Walter v. Wal-Mart Stores, Inc.*, 748 A.2d 961, 972 (Me. 2009) (holding expert testimony was not necessary to show professional negligence where a pharmacist filled a prescription with the wrong drug). That court explained, "[i]t does not take an expert to know that filling a prescription with the wrong drug . . . is negligence." *Bender*, 945 A.2d at 124 (quoting *Walter*, 748 A.2d at 972); *see also Hubbard ex rel. Hubbard v. Reed*, 774 A.2d 495, 500-01 (N.J. 2001) (applying the common knowledge exception to claims based on a dentist's extraction of the wrong tooth); *Estate of Chin v. Saint Barnabas Med. Ctr.*, 734 A.2d 778, 786-87 (N.J. 1999) (utilizing the exception where pumping gas into a patient caused a fatal air embolism).

We agree with these courts: the common knowledge exception provides sound guidance to distinguish between ordinary and professional negligence in order to determine whether a party's claim is subject to NRS 41A.071's affidavit requirement.[4] When determining whether to apply the exception, we adopt the framework set forth by the Supreme Court of Michigan:

> [A] court must ask two fundamental questions in determining whether a claim sounds in ordinary

---

[4]We have addressed this exception before, in *Szydel v. Markman*, and concluded that an expert affidavit is unnecessary in *res ipsa loquitur* cases under NRS 41A.100(1). 121 Nev. 453, 459, 117 P.3d 200, 204 (2005). Here, we recognize the common knowledge exception's applicability to professional negligence claims that do not fall under NRS 41A.100.

negligence or [professional negligence]: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern [professional negligence] actions.

*Bryant v. Oakpointe Villa Nursing Ctr., Inc.*, 684 N.W.2d 864, 871 (Mich. 2004). We reiterate that the exception's application is extremely narrow and only applies in rare situations. *See Smith*, 952 So. 2d at 181 (limiting the exception to situations of blatant negligence and declining to extend it to situations that involve professional judgment).

Here, the Estate's complaint focused on management and staffing issues at LCC. But the Estate ultimately based its theory on two underlying allegations against LCC: (1) Nurse Dawson administered morphine to Curtis that was prescribed for another patient, and (2) LCC thereafter failed to properly monitor and care for Curtis. For the following reasons, we conclude that the latter allegation is based in professional negligence, while the former sounds in ordinary negligence.

*Nurse Dawson administering morphine to Curtis is a matter of ordinary negligence*

The threshold issue here is whether Nurse Dawson's negligence in administering morphine to Curtis that was prescribed to another patient constitutes professional negligence that would trigger NRS 41A.071's affidavit requirement. The California Court of Appeal, addressing a case where the plaintiff fell off an unsecured, unattended x-ray table, held that small instances of ordinary negligence may still fall under professional negligence if it is an integral part of the medical service. *Bellamy v. Appellate Dep't*, 57 Cal. Rptr. 2d 894, 895, 900-01 (Ct. App. 1996). The court

noted that although some "tasks may require a high degree of skill and judgment, but others do not," in that instance, each task the x-ray technician performed was "an integral part of the professional service being rendered." *Id.* at 900. And the Court of Appeals of Georgia has concluded that a nurse administering the wrong medicine to a patient can potentially be an act of professional judgment. *Grady Gen. Hosp. v. King*, 653 S.E.2d 367, 367 (Ga. Ct. App. 2007). In *Grady*, however, the patient told the nurse the medication was incorrect, which then required the nurse to use her professional judgment to determine whether to continue to administer the medication. *See id.* (stating that the nurse should have "call[ed] the physician's attention to any question that [arose]" regarding a prescribed medication).

Unlike those cases, however, the Estate's claim that Nurse Dawson administered morphine that was not prescribed to Curtis does not raise any questions of medical judgment beyond the realm of common knowledge or experience. Nurse Dawson used no professional judgment in administering the morphine—she simply gave Curtis the wrong drug because she had mixed up the prescriptions. In contrast to *Bellamy*, the negligent action here occurred when Nurse Dawson administered the medication, whereas in *Bellamy*, the negligence occurred during the course of the health care professional performing a variety of tasks, some of which required professional judgment and some of which did not, making it impossible in that case to separate the ordinary negligence from the professional negligence. *Id.* at 900. And, in contrast to *Grady*, Nurse Dawson simply administered the wrong medication without any intervening issues that required her to exercise her professional judgment.

SUPREME COURT
OF
NEVADA

(O) 1947A

12

Thus, although administering medication constitutes medical treatment, *see Szymborski*, 133 Nev. at 641-42, 403 P.3d at 1284-85, an allegation that a health care professional administered a patient's medicine to a different patient is an allegation of ordinary negligence that requires no expert testimony to assess. Indeed, in this case, the prescribing physician made the medical decision that required professional judgment as to what medication Curtis required, but Nurse Dawson's administration of another patient's prescribed medication did not require any similar judgment call. Importantly, *Szymborski* clarifies that a claim is for professional negligence "if the jury can only evaluate the plaintiff's claims after presentation of the standards of care by a medical expert," *id.* at 642, 403 P.3d at 1284; yet here, any lay juror could evaluate the negligence based on their own common knowledge and experience, *see id.* at 642, 403 P.3d at 1285 (recognizing that being able to evaluate a claim based on common knowledge and experience means "the claim is likely based in ordinary negligence"). Accordingly, we reverse the district court with respect to the allegations based upon Nurse Dawson's administration of another patient's morphine to Curtis, as this sounds in ordinary negligence, and the Estate was therefore not required to submit an expert affidavit under NRS 41A.071 to pursue a negligence claim based solely on that act.

*LCC's failure to monitor Curtis is a matter of professional negligence*

The next issue is whether the Estate's allegation that LCC's staff failed to monitor Curtis after administering morphine is a matter of professional negligence. We conclude that it is.

The gravamen of this allegation is that LCC failed to monitor Curtis. *See Szymborski*, 133 Nev. at 643, 403 P.3d at 1285 (explaining a court must look to the gravamen of the claim to determine the type of negligence). This allegation raises questions beyond the realm of common

knowledge and experience. *See id.* at 642, 403 P.3d at 1285. Namely, after Nurse Dawson's alleged mistake, the Estate alleges that LCC's staff contacted a physician who prescribed Narcan to counteract the morphine, that LCC decided not to transfer Curtis to the hospital, and that LCC placed Curtis on a monitoring order but did not monitor her or check her vitals between 5 p.m. that day and 11 a.m. the next morning. We conclude each of these decisions required some degree of professional judgment or skill. Indeed, a lay juror could not properly evaluate the failure-to-monitor allegations by relying merely on common knowledge and experience; the juror would have to make judgment calls on what constitutes proper supervision for a patient who was incorrectly administered morphine, whether LCC took adequate remedial measures upon realizing the mistake including giving Curtis Narcan, and whether LCC should have transferred Curtis to a hospital for further intervention and/or monitoring. *See id.* Thus, the failure-to-monitor allegation is an allegation of professional negligence and, as such, it is subject to NRS 41A.071's affidavit requirement. Accordingly, we affirm summary judgment as to this claim.[5]

---

[5]We are not persuaded that requiring compliance with NRS 41A.071 eviscerates the protections of NRS 41.1395, Nevada's elder abuse statute. First, the record does not support an elder abuse claim here, where Nurse Dawson's actions were grounded in negligence, rather than in willful abuse or the failure to provide a service. *See* NRS 41.1395(4)(a) (defining abuse) and (4)(c) (defining neglect). Moreover, this statute neither prevents application of the affidavit requirement in professional negligence cases nor suggests the Legislature intended for this statute to circumvent that requirement where the elder abuse claim is rooted in professional negligence.

*Res ipsa loquitur does not relieve the Estate of its duty to file an expert affidavit*

The Estate contends that, as an alternative, it is excused from complying with NRS 41A.071 because its claim falls within the *res ipsa loquitur* exception to the affidavit requirement. We disagree.[6]

NRS 41A.100(1) provides several *res ipsa loquitur* exceptions to NRS 41A.071's expert affidavit requirement in an action against a health care provider. *See Peck v. Zipf*, 133 Nev. 890, 892, 407 P.3d 775, 778 (2017) (discussing NRS 41A.100(1)). The Estate raises only the exception enumerated in NRS 41A.100(1)(d), namely, that the "injury was suffered during the course of treatment to a part of the body not directly involved in the treatment or proximate thereto," and we therefore only address that subsection. *See Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) (stating that issues not raised in an appellant's opening brief are waived).

NRS 41A.100 does not exempt the Estate from the affidavit requirement in this case. The injury the Estate alleges does not fit within the NRS 41A.100(1)(d) exception, as Curtis suffered no injury "to a part of the body not directly involved in the treatment"—rather, the treatment

---

[6]The Estate also argues negligence per se based on LCC's violations of its own regulations and NRS 41A.100. That argument fails, as negligence per se arises when a duty is created by statute, *see Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 828, 221 P.3d 1276, 1283 (2009), not when a company allegedly violates self-imposed rules, and NRS 41A.100 does not place any duty on health care providers. And to the extent the Estate argues that violation of LCC's regulations without acommpanying expert testimony can be used to prove a professional negligence claim, that reading is irreconcilable with the specific affidavit requirement set out in NRS 41A.071. If the claim alleging professional malpractice does not fall under NRS 41A.100 and the common knowledge exception does not apply, NRS 41A.071 requires a supporting affidavit.

itself was injurious. Thus, the doctrine of *res ipsa loquitur* does not excuse compliance with NRS 41A.071 in this case.

## CONCLUSION

The mistaken administration of another patient's morphine in this case constitutes ordinary negligence that a lay juror could assess without expert testimony, and a claim predicated solely upon such ordinary negligence is not subject to NRS 41A.071's medical expert affidavit requirement. The district court therefore erred in granting summary judgment as to this allegation. However, the district court correctly granted summary judgment as to the remaining allegations regarding the failure to monitor, as those allegations challenge whether the health care provider's medical judgment violated the established duty of care and require expert testimony to support. Accordingly, we affirm in part, reverse in part, and remand this matter to the district court for further proceedings consistent with this opinion.

_____, J.
Silver

We concur:

_____, J.
Gibbons

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A